In the Matter of the Application of STANLEY J. HAUGES, Petitioner, for an Order of Mandamus against J. LEON LASCOFF and Others, as Members Constituting the New York State Board of Pharmacy, Respondents.

Supreme Court, Oneida County, July 15, 1931.

*Southworth & Malone* [*M. Francis Malone* of counsel], for the petitioner.

*John J. Bennett, Jr., Attorney-General* [*August Merrill, Assistant Attorney-General*, of counsel], for the defendants.

*Charles A. Brind, Jr.*, for the New York State Pharmaceutical Association, *amicus curiæ*.

LEWIS, EDMUND H., J. This application for a peremptory order of mandamus presents for decision the single question whether the New York statute requiring the owner of a pharmacy to be a licensed pharmacist is unconstitutional.

The petitioner is a licensed druggist; he is not a licensed pharmacist. The New York State Board of Pharmacy has refused to issue to him a certificate of registration of ownership of a pharmacy in the city of Utica, N. Y., the refusal being based upon the fact

that he is ineligible to ownership of a retail pharmacy by reason of his failure to bring himself within the provisions of section 1354 of the Education Law. That statute requires every pharmacy to be owned by a licensed pharmacist.

The petitioner contends that the statute which the Board invokes unreasonably limits a right which is guaranteed to him by the Fourteenth Amendment of the Federal Constitution.

If the statute in question is valid it must be as a governmental regulation in the exercise of police power. Such a statute must have been enacted to prevent some manifest evil or to preserve public health, morals or welfare. (*Lawton* v. *Steele*, 152 U. S. 133.) "A legitimate public purpose may always be served without regard to the constitutional. limitations of due process and equal protection. * * * The Legislature has a wide discretion in protecting the public from the dishonest and irresponsible. * * * The question is how to apply the test." (*People* v. *Perretta*, 253 N. Y. 305, 309.) The tests to be applied in this proceeding, as in all cases of similar character, are whether the regulation is *reasonable* (*People ex rel. Tyroler* v. *Warden of Prison*, 157 N. Y. 116) and whether there is a direct connection between the object sought to be accomplished and the means prescribed to accomplish the end. (*Burns Baking Co.* v. *Bryan*, 264 U. S. 504.)

The statute which the petitioner challenges by this proceeding provides in part as follows (Education Law):

" § 1354. * * * Every pharmacy shall be owned by a licensed pharmacist and every drug store shall be owned by a licensed druggist; and no copartnership shall own a pharmacy unless all the partners are licensed pharmacists and no copartnership shall own a drug store unless all the partners are licensed druggists; except that any corporation, organized and existing under the laws of the state of New York or of any other state of the United States and authorized to do business in the state of New York and empowered by its charter to own and conduct pharmacies or drug stores, and, at the time of the passage of this act, still owns and conducts a registered pharmacy or pharmacies or a registered drug store or drug stores in the state of New York, may continue to own and conduct the same and may establish and own additional pharmacies or drug stores in accordance with the provisions of this article, but any such corporation which shall not continue to own at least one of the pharmacies or drug stores theretofore owned by it or ceases to be actively engaged in the practice of pharmacy, shall not be permitted thereafter to own a pharmacy or a drug store; and except that any person, not a licensed pharmacist or a licensed druggist, who at the time of the passage

of this act owns a registered pharmacy or a registered drug store in the state of New York, may continue to own and conduct the same in accordance with the provisions of this article; and except that the administrator, executor or trustee of the estate of any deceased owner of a registered pharmacy or drug store, or the widow, heirs or next of kin of such deceased owner, may continue to own and conduct such registered pharmacy or drug store, in accordance with the provisions of this article." (As amd. by Laws of 1930, chap. 835.)

Let us consider first whether the statute under consideration was in fact designed to preserve public health or general welfare. In response to public demand the Legislature has formally recognized a number of vocations as professions, the purpose of such regulation having been to bring practitioners in these professions under State supervision. Accordingly it was provided by the Education Law, section 51:

" § 51. Supervision of professions. Conformably to law the regents may supervise the entrance regulations to and the licensing under and the practicing of the professions of medicine, dentistry, veterinary medicine, pharmacy, optometry and chiropody, and also supervise the certification of nurses, public accountants, certified shorthand reporters, architects, and members of any other profession which may hereafter come under the supervision of the head of the board of regents.

" The regents may by rule or order accept evidence of preliminary and professional education, in whatever state or country the same may have been obtained, for licensing a candidate to practice any such profession in lieu of that prescribed by the laws relating to such profession; provided it shall appear to the satisfaction of the regents that such candidate has substantially met the requirements of such laws." (As amd. by Laws of 1930, chap. 693.)

This list of professions included within the above statute speaks for itself. When read in connection with the other provisions of law regulating those professions it clearly indicates the Legislature's purpose to protect the health and safety of the public from irresponsible and unskilled practitioners. No one now questions the wisdom of such a measure.

In line with that purpose the law has forbidden corporations to practice within such professions. (*People* v. *Woodbury Dermatological Inst.*, 192 N. Y. 454; *Hannon* v. *Siegel-Cooper Co.*, 167 id. 244.) The reason for denying to a corporation the right to practice a profession is clearly to prevent the shifting of personal responsibility for inferior quality of personal service. Personal ownership

and resulting personal responsibility are essential to the safety and health of the public in the practice of any profession. For the same reason it is a reasonable requirement that before a proprietary interest in a pharmacy can be acquired such prospective owner must have become a licensed pharmacist.

The chief function of a pharmacy is to dispense to the public (either compounded under a physician's direction or prescribed by a physician without the necessity of compounding) various drugs and chemicals, the quality of which is an important factor. Upon the potency of the drugs and chemicals sold and the quality of the work in compounding them may depend the efficacy of the cure. The skill of the physician may be offset by the inferiority of a pharmacist's drugs which have been prescribed. It is common knowledge that time is an important element to be considered in the preserving of drugs and chemicals. Some become ineffective for a prescribed purpose after they have been permitted to age beyond a certain time; others, by chemical change, may be converted into poison. In plain speech public welfare requires that the proprietor of a pharmacy should know his business. The health of the public suffers if his stock of drugs is allowed to deteriorate; the safety of the public is endangered if he employs clerks of inferior skill.

No one questions the reasonableness of the statute which requires a practicing physician to be licensed by the State. Can it not be said with equal reason that a license should be required of the proprietor of a pharmacy who is responsible for the quality and potency of the drugs and chemicals which the physician prescribes to effect a cure? Is it not reasonable that the State should have some control over the man whose responsibility it is to employ men and women of expert knowledge to compound the prescriptions of a physician? If we license the physician should we not license him who is largely responsible for putting the physician's advice into effect? The Court of Appeals has quoted with approval from a treatise on the State and Federal control of persons and property when it said: " Safeguards of every kind can be thrown around the sale of poisonous drugs so that damage will not be sustained from an improper use thereof." (*State Board of Pharmacy* v. *Matthews* 197 N. Y. 353, 358.)

It is by a statute such as the one under consideration that the State in the interest of public health and welfare can, to some measure, control the quality of service to be rendered to the sick. In effect the command of the statute is addressed to the *owner* or *proprietor* of the pharmacy. There the responsibility should remain. Possible penal consequences for illegal acts by the

proprietors of pharmacies are not enough. The demand is for consistent quality of pharmaceutical service. Public health means sound health and it may reasonably require carefully regulated pharmacies to preserve it.

Approaching from another point of view the question of the reasonableness of this statute, the record shows that following the close of the World War illicit traffic in habit-forming drugs and prohibited intoxicants showed a State-wide increase. Large profits to those who could legally dispense such products lured persons of inferior character and a low type of mentality into the field of pharmacy. Those who sensed the public necessity of high grade pharmacies in communities realized that the profession was being degraded and the effect of its public service handicapped. Men of broad knowledge upon the subject, with unquestioned purpose to protect the public, appeared before the Legislature and the Governor in support of the act now challenged. Their arguments apparently carried conviction. It cannot be doubted that the Legislature recognized a new evil to be met and prevented. "The needs of successive generations may make restrictions imperative to-day which were vain and capricious to the vision of the times past." (*Klein* v. *Maravelas*, 219 N. Y. 383, 386.)

The foregoing reasons for the enactment of the statute in question were presented to the Legislature with supporting facts and data, much of which is in the record before the court upon this application. However, the petitioner claims that the question of the constitutionality of the statute was decided favorably to his contention in *Liggett Co.* v. *Baldridge* (278 U. S. 105) when the Supreme Court of the United States held a statute of the State of Pennsylvania unconstitutional which, it is claimed, was similar to the one under consideration in the case at bar. The petitioner further claims that the Supreme Court of this State in *Pratter* v. *Lascoff* (140 Misc. 211) has held this statute to be unconstitutional.

I have approached the determination of this proceeding with entire deference to each of the two decisions last mentioned above. Accordingly I have made a careful study of the record before each of said courts. In the *Liggett* case I find the United States Supreme Court did not have before it as a matter of record much of the data which is before this court upon this proceeding and such facts as were before it differed widely from those now before this court. It is probable that this lack of data prompted the statement of Mr. Justice SUTHERLAND in *Liggett* v. *Baldridge* (*supra*, at p. 113): "No facts are presented by the record, and, so far as appears, none were presented to the legislature which enacted the statute, that properly could give rise to a different conclusion." It will

also be found upon analysis that the Pennsylvania statute differs in important details from the statute involved in this proceeding. In this connection the Supreme Court of the United States has said: "Every opinion is to be read having regard to the facts of the case and the question actually decided." (*Weaver* v. *Palmer Bros. Co.*, 270 U. S. 402, 414.) As to the *Pratter* case, while the statute under consideration was the same, the court in this proceeding has had the benefit of a more complete record upon which to base its decision.

I return to the question before the court: Is the statute which the petitioner has challenged reasonably adaptable to and in the interest of public health and general welfare? The answer is supplied by the particular record before the court in this proceeding, the dominant note of which is the protection of the public. It leads me to the conclusion that the statute does not violate the provision of the Constitution which the petitioner invokes. While it may affect his right to pursue his vocation in the way he desires, it does so with authority of law. "Any trade, calling or occupation may be reasonably regulated if ' the general nature of the business is such that unless regulated many persons may be exposed to misfortunes against which the Legislature can properly protect them.' " (*People* v. *Beakes Dairy Co.*, 222 N. Y. 416, 427.)

" To justify the court * * * in declaring a statute invalid, the conflict between the act and the Constitution must be clear and certain. Every presumption favors the validity of the statute. If there is a reasonable doubt, the act should be upheld." (*Gardner* v. *Ginther*, 232 App. Div. 296, 298.) The rule of the Court of Appeals demands that when the constitutionality of a statute is challenged, " A case must be presented in which there can be no rational doubt." (*People ex rel. Carter* v. *Rice*, 135 N. Y. 473, 484.) The petitioner has failed to bring this proceeding within that rule.

Accordingly the application for a peremptory order of mandamus is denied, with fifty dollars motion costs.