In the Matter of the Estate of BURTON J. YOUNG, Deceased.
County Court, Delaware County, ———, 1933.

*Grant & McNaught,* for the petitioner.
*Hamilton J. Hewitt,* for the Town of Kortright.

BROWN, J. This proceeding is brought for the determination and allowance of a claim in behalf of the estate of Burton J. Young against the town of Kortright in the county of Delaware under section 205 of the General Municipal Law. The application was made to the county judge of Delaware county, and, a certificate of disqualification having been filed by him, further proceedings have been had before the county judge of Chenango county.

The proceeding was instituted by the filing of a petition by Edna M. Young, as administratrix of the estate of Burton J. Young. The town of Kortright appeared specially and raised various questions concerning the validity of the claim and the liability of the town of Kortright, challenging the right of the petitioner to recover and attacking the constitutionality of section 205 of the General Municipal Law, and also filed an answer to the petition.

There is no serious dispute as to the facts. The incorporated village of Hobart is in Delaware county in this State and within the town of Stamford, which adjoins the town of Kortright, one of the towns in Delaware county. In the incorporated village of Hobart there exists a volunteer fire company, organized pursuant to chapter 315 of the Laws of 1887 under the name of Hobart Fire Department. This organization is comprised of Clinton Engine Company and Cascade Hose Company. On the 2d day of November, 1931, Burton J. Young, petitioner's intestate, was an active member of Hobart Fire Department and assistant chief of the department. On the date mentioned the residence of George Burgher was located on the main highway passing through the villages of Hobart and South Kortright, located about three miles from Hobart. In the afternoon of November 2, 1931, a call was made to the Hobart Fire Department to extinguish a fire in the residence of Mr. Burgher in the town of Kortright. The fire department responded to such call and several of its members, including Burton J. Young, went to the Burgher home and engaged in extinguishing the fire. Hose was laid from the residence along the highway for a distance to a pumper located at or near a stream of water. After the fire was nearly extinguished, the hose extending along the highway had been uncoupled to permit the larger of the two pumpers being used to return to the village of Hobart. The decedent Young was passing along the highway, walking parallel to the line of hose, toward the small pumper for the purpose of having the same put in action, when he was struck by an automobile being driven along the highway by one Jacob Cohn and killed. This occurred around seven o'clock in the evening. At

the time of the accident resulting in Mr. Young's death, the fire was still burning and water was applied following his death.

The first subdivision of section 205 of the General Municipal Law provides: " If an active member of a volunteer fire company in any city, incorporated village or in any fire district of a town outside of an incorporated village or in any part of a town protected by a volunteer fire company incorporated under the provisions of the membership corporations law, or if an active member of any duly organized volunteer fire company, dies from injuries incurred while in the performance of his duties as such fireman or as a member of a fire department emergency relief squad or while attending a fire training school within one year thereafter, the city, village, or town shall pay as follows:  *   *   *

" c.. If in any other place the sum of three thousand dollars shall be paid to the executor or administrator of such deceased volunteer fireman."

Subdivision 4 of said section provides that the sum to be paid an injured fireman or the estate of a deceased fireman shall be a charge upon the city, village or town, as the case may be, to be audited and paid in the same manner as other charges against such municipalities, and should be assessed upon the property and persons liable to taxation in the municipality and levied and collected in the same manner as other municipal taxes, and further: " If such injury occur while a fire company is assisting a neighboring city, town, village or fire district, or territory outside any such district, in the subjugation of fire, or while going thereto or returning therefrom, upon the call of such city, town, village or fire district, or territory outside any such district, or death shall result from any such injury, such sum shall be a charge against such neighboring city, town, village or fire district, or territory outside any such district, so issuing the call for assistance and in which the fire occurred."

Further provision is made for the determination of any controversy arising under this section as follows: " Any controversy arising at any time under the provisions of this section shall be determined by the county judge of the county in which the volunteer fire company is located and of which such volunteer fireman is a member.  For that purpose, any party may present a petition to such county judge, setting forth the facts and rights which are claimed.  A copy of such petition and notice of the time and place when the same will be presented shall be served on all persons interested therein, at least eight days prior to such presentation."

The town of Kortright contends that section 205 is unconstitutional, as it deprives the town and the taxpayers thereof of its or their property without due process of law. The expression "due process of law" cannot be defined with exactness. Even an approach to a satisfactory definition so as to apply to all cases cannot well be made. The indefiniteness of the true meaning of the term has long been recognized by the courts. Judge EARL, writing in *Stuart* v. *Palmer* (74 N. Y. 183, at p. 191), says: "It is difficult to define with precision the exact meaning and scope of the phrase 'due process of law.' Any definition which could be given, would probably fail to comprehend all the cases to which it would apply. It is probably wiser, as recently stated by Mr. Justice MILLER of the United States Supreme Court, to leave the meaning to be evolved 'by the gradual process of judicial inclusion and exclusion, as the cases presented for decision shall require, with the reasoning on which such decisions may be founded.' (*Davidson* v. *Board of Administrators of New Orleans*, 17 Albany Law Journal, 223.) It may however be stated generally that due process of law requires an orderly proceeding adapted to the nature of the case in which the citizen has an opportunity to be heard, and to defend, enforce, and protect his rights. A hearing or an opportunity to be heard, is absolutely essential. * * * 'Due process of law undoubtedly means in due course of legal proceedings according to those rules and forms which have been established for the protection of private rights.'"

In *People* v. *Adirondack Railway Company* (160 N. Y. 225, at p. 236), discussing "due process of law," it is said: "While to a reasonable extent it may be regulated by statute, ordinarily it rests upon established custom, and a method of procedure having the sanction of settled usage is commonly regarded as due process of law. It does not necessarily mean a judicial proceeding, for a man may be lawfully deprived of his property through the power of taxation, or of the use of his property through the police power without the intervention of any court. (*McMillen* v. *Anderson*, 95 U. S. 37, 41.)"

Here the statute provides for a hearing and contemplates a judicial determination. It commands that "any controversy arising at any time under the provisions of this section shall be determined by the county judge of the county in which the volunteer fire company is located and of which such volunteer fireman is a member." It further provides that, for the purpose of obtaining a determination, any party may present a petition to the county judge setting forth the facts and rights claimed. It requires notice to the adverse party of the presentation of such

petition at least eight days prior to its presentation. This eight days' notice corresponds with the length of time given in the usual notice of motion in actions or proceedings. The statute also contemplates that the amount to be paid shall be a charge against the municipality to be audited and paid in the same manner as town charges and assessed upon the property and persons liable to taxation in the territory protected.

Neither the town of Kortright nor its citizens have been deprived of any right to be heard and contest the claim made by the petition. The statute affords it an opportunity to be heard in any controversy arising under the provisions of the section before a determination is had. It would seem that the section does not offend the " due process of law " clause of the Constitution.

One purpose of the statute is to encourage extending aid and protection to property owners residing in localities without local fire protection. It is in the public interest. It encourages efforts to give aid in the protection of property in those districts where the facilities for such aid and protection locally are not available. The police power vested in the Legislature authorizes acts for the public good. In *Darlington* v. *Mayor, etc., of New York* (31 N. Y. 164), where " an act for compensating parties whose property may be destroyed in consequence of mobs or riots " (Laws of 1855, chap. 428) was under consideration (at p. 189), it is stated: " Assuming it to be sufficiently apparent that the statute in question falls within the general scope of legislative authority, the particular inquiry is, whether it violates the constitutional provisions relied on by the defendant. It is plain enough that the suits which it authorizes, will, if successful, result in requiring contributions from the taxpayers of the local communities, to make good the losses of persons who have suffered from the acts of rioters. In that way, it may be said that their property may be taken. In one sense it may be conceded that it is taken for a public use; for when the State undertakes to indemnify the sufferers from riots, the executing of that duty is a public concern, and the expenditure is on public account. It is a public use in the same sense as the expenditure of money for the erection of court houses and jails, the construction of roads and bridges, and the support of the poor. It is taken for an object which the Legislature has determined to be of public importance, and for the interest of the State. Private property thus taken is not seized by the execution of the right of eminent domain." (*Colon* v. *Lisk*, 153 N. Y. 188; *Bertholf* v. *O'Reilly*, 74 id. 509.)

The Legislature is the final judge of what is in the public interest and what the general welfare requires to be done. (*Darlington* v.

*Mayor, etc., supra; Cayuga County* v. *State,* 153 N. Y. 279; *Matter of Tuthill,* 163 id. 133.)

The section provides that the sum the town is directed to pay in cases where a fireman is injured or loses his life when engaged in the subjugation of a fire shall be a municipal charge and raised by taxation. The Legislature acted within its constitutional authority in making such direction.

" Municipal corporations are creatures of the State and exist and act in subordination to its sovereign power. The Legislature may determine what moneys they may raise and expend, and what taxation for municipal purposes may be imposed; and it certainly does not exceed its constitutional authority when it compels a municipal corporation to pay a debt which has some meritorious basis to rest on." (*Mayor, etc.,* v. *Tenth National Bank,* 111 N. Y. 446, 459.)

It is within legislative authority to provide for the payment of private claims where they rest upon a meritorious basis.

" The Legislature is not confined in its appropriation of the public moneys, or of the sums to be raised by taxation in favor of individuals, to cases in which a legal demand exists against the State. It can thus recognize claims founded in equity and justice in the largest sense of these terms, or in gratitude or charity. Independently of expressed constitutional restrictions, it can make appropriations of money whenever the public well being requires or will be promoted by it; and it is the judge of what is for the public good." (*Town of Guilford* v. *Supervisors of Chenango County,* 13 N. Y. 143, 149.)

This principle is sustained in *People* v. *Westchester County National Bank* (231 N. Y. 465, 470); *W. I. B. Co.* v. *Town of Attica* (119 id. 204, 211); *Matter of Mahon* v. *Board of Education* (171 id. 263, 265); *Hermitage Co.* v. *Goldfogle* (204 App. Div. 710); *Matter of McAneny* (198 id. 205).

The validity of a statute is entitled to every presumption. The court will not declare a legislative act invalid unless the conflict between it and the Constitution is so clear and certain that no room for doubt is left. (*People ex rel. Carter* v. *Rice,* 135 N. Y. 473; *Wesmer* v. *Village of Douglas,* 64 id. 91; *Gardner* v. *Ginther,* 232 App. Div. 296; affd., 257 N. Y. 578; *Matter of Hauges* v. *Lascoff,* 140 Misc. 811; *People* v. *Brennan,* 142 id. 225.)

The objection made to the claim on the part of the town of Kortright, on the ground that the object of the incorporation of the Hobart Fire Department as given in the certificate of incorporation is the " prevention and extinguishment " of fires in the incorporated village of Hobart, and because of such specification the department had no authority or permission from the village of Hobart to go to

the aid of any village or town outside such incorporated village to aid in the subjugation of a fire, and that the department only had authority to act in connection with fires in the incorporated village of Hobart, is not well taken. The fact that the purpose of the incorporation, as stated in the certificate, is to prevent and extinguish fires within the corporate limits of Hobart does not prohibit the department or the members thereof extending aid in extinguishing fires outside the village. *People* v. *Inst. of Protestant Deaconesses* (71 Ill. 229); *Matter of Moses* (138 App. Div. 525) and *Matter of White* (118 id. 869), cited in brief of counsel in support of such objection, are not applicable. The decision in the first case merely holds that by its charter the corporation mentioned was restricted as to its place of operation to a certain locality. The *Moses* case is authority that the status of a corporation must be determined by the act of incorporation and not by proof of what it has assumed to do. To the same effect is *Matter of White*. No act of the Hobart Fire Department is in question here. The status of the fire department is in no way involved.

It is urged that the call made to the Hobart Fire Department for assistance was not made by authority of the town of Kortright and without the authority or consent of the town board of that town and that, therefore, the petitioner is not entitled to the rights afforded by the section with which we are dealing. The statute reads: " upon the call of such city, town, village or fire district, or territory outside any such district." To hold that such call must come from duly constituted authorities of the town would nullify the purposes for which the statute was enacted. It would render the statute of practically no value or efficacy. If the call mentioned in the section refers to one made by official authority in behalf of the town, then the convening of the town board would be a necessary act preliminary to obtaining aid and, in most instances, before the members of the board could be assembled, the owner's property would be reduced to ashes. That the Legislature never intended that such a construction should be placed on the expression " upon the call " of the town is apparent. The purpose for which the call may be given requires a liberal construction and justifies the conclusion that the call may be made by any resident of the town in which the endangered property is located. (*Matter of Brown,* 125 Misc. 600.)

Counsel for the town of Kortright insists that the petitioner cannot succeed in this proceeding because the village of Hobart had not, at the time of the fire in question, adopted an ordinance authorizing and permitting its fire department or companies to go to aid any town or fire district or territory outside its village in extinguishing

a fire or fires as permitted by section 209 of the General Municipal Law, being chapter 332 of the Laws of 1931 and in effect April 8, 1931, prior to the time of the accident resulting in the death of Mr. Young. The act of 1931 in no way modifies or changes section 205. There is nothing in the act to indicate a legislative intent to nullify the provisions of that section. The contention of counsel that section 209 defines the rights and privileges of firemen and that they are not entitled to any of the benefits given in section 205 unless an ordinance has been adopted authorizing and permitting the fire department or fire companies of which such firemen are members to take the fire apparatus of the fire department to go to aid another village, town or fire district in extinguishing a fire or fires, is not supported by the provisions of the section. The section does not attempt to define or limit the " immunities and privileges'' the firemen shall enjoy " while in the performance of their duties in extending such aid.'' When we consider the entire section, the purpose of its enactment by the Legislature is plainly evident. Provision had already been made in section 205 for recompense for injuries received by firemen and for benefits to the estates of deceased firemen when such injury or death occurred while aiding in the extinguishment of fires outside the village or town in which the fire department of which they were members was incorporated, but no provision was made for damages to apparatus belonging to the village or town and the amendment of 1931 provides for payment of such damages. All rights and benefits accruing to firemen, when aiding in the extinguishment of a fire outside of their own village or town, were to remain unimpaired. This is evidenced by the amendment of 1932 of subdivision 1 of section 205, in effect March 4, 1932, extending the benefits given therein to include additional fire department members.

I do not agree with counsel for the town that the section under consideration is in direct conflict with section 170 of the Town Law. The latter section merely designates under the caption " Town charges '' certain items which " shall be deemed town charges.'' Likewise, subdivision 4 of section 205 of the General Municipal Law provides that the sum to be paid a fireman pursuant to that section shall be a charge against the town issuing the call for assistance and in which the fire occurred. It thus becomes a town charge with the same force and effect as if it were enumerated among the items mentioned in section 170 of the Town Law. The Legislature is not restricted by the Constitution from making it a town charge. (*Matter of Borup*, 182 N. Y. 222.)

The present provision for payment to the estate of a deceased fireman whose death is occasioned by injuries incurred while in the

performance of his duties as such fireman recognizes the obligation of a municipality to meet and discharge a duty founded in justice. The Legislature has seen fit to reward those volunteer firemen when injured and make compensation to the estate of those losing their lives in efforts to safeguard property of the citizens of the State from destruction by fire. The purpose to be served by the statute is undeniably meritorious, and, in the absence of a clear conflict with constitutional limitations, the courts are inclined not to interfere. (*Town of Guilford* v. *Supervisors, supra; Matter of Borup, supra; People* v. *Westchester Co. Nat. Bank, supra.*)

I have reached the conclusion that the petitioner is entitled to be paid by the town of Kortright the sum named in the statute, and I so determine.