CITY OF WATERTOWN, Plaintiff, *v.* TOWN OF WATERTOWN, Defendant.

Supreme Court, Special Term, Jefferson County, February 16, 1952.

434

*Dunk, Conboy, McKay & Bachman* for defendant.

*Kenneth W. Brett* for plaintiff.

BASTOW, J. The defendant moves to dismiss plaintiff's amended complaint pursuant to rule 106 upon the ground that it appears on the face thereof that it does not state facts sufficient to constitute a cause of action. In such circumstances the allega-

tions of facts found in the complaint are treated as admitted by the defendant. (*Kane* v. *Walsh*, 295 N. Y. 198.) From those allegations it appears that on July 1, 1950, the plaintiff maintained a fire department, all of whose members were paid firemen, and owned a 1948 Seagrave, 1,000 gallon, triple combination pumper with a 150-gallon booster tank and other equipment thereon.

On the stated date the fire department of the plaintiff received a call for assistance from the defendant to respond to a fire in the town of Watertown. While answering the call the described pumper owned by the plaintiff and being operated with its consent by one Harry J. Davies, a paid fireman, a tractor-trailer owned by one Lillian Fowler and operated with her consent by one Alexander Kemp, and an International truck owned and operated by one Kenneth Brown collided at the intersection of two public streets in the city of Watertown.

It is claimed by the plaintiff that as a result of the collision it sustained damage and incurred expense as follows: (a) damage to the pumper and its equipment in the sum of $5,000; (b) paid for examination of damage to pumper and its shipment to and from Columbus, Ohio, in the sum of $466.04; (c) paid for medical, hospital and nursing services furnished to one Clarence LaMora, who was a paid fireman riding on the pumper and received injuries causing his death on July 4, 1950, and a further sum paid as his salary for four days all in the total amount of $712.37; (d) paid to the administratrix of LaMora in settlement of action for conscious pain and suffering of LaMora and for causing his death the sum of $15,000; (e) paid for medical, hospital and nursing services furnished to one Lyle McCrea and one Harry Davies, who were paid firemen riding on the pumper and who received injuries and a further sum paid them as salaries while they were disabled all in the total amount of $2,503.18.

The total of these claimed damages and expenditures is the sum of $23,681.59. In addition the plaintiff seeks to recover the sum of $1,401.40 based upon a claim filed against the plaintiff by Lillian Fowler for damages to the tractor-trailer involved in the accident. The claimant has not brought action thereon and the amended complaint states that action against the city is barred by the Statute of Limitations. Finally, the plaintiff seeks to recover the sum of $5,600, the amount sought to be recovered from it and others in an action brought in this court by Kenneth Brown, the owner and operator of the International truck, for personal injuries and damages to the truck. That action is pending.

The amended complaint thus seeks to recover a total of $29,281.29 and it is stated therein that the plaintiff is entitled to payment by the defendant " pursuant to sections 207-a and 209 of the General Municipal Law ".

On July 1, 1950, the pertinent provisions of section 207-a read as follows: " Any fireman in a city of less than one million population, or town or village having a paid fire department, who is injured in the performance of his duties * * * so as to necessitate medical or other lawful remedial treatment, shall be paid by the municipality in which he is employed the full amount of his regular salary or wages until his disablity arising therefrom has ceased, and, in addition, such municipality shall be liable for all medical treatment and hospital care furnished during such disability. * * * Notwithstanding any provision of law contrary thereto contained herein or elsewhere, a cause of action shall accrue to the municipality aforesaid for reimbursement in such sum or sums actually paid as a salary or wages and/or for medical or hospital treatment, as against any third party against whom the fireman shall have a cause of action for the injuries sustained."

The pertinent provisions of section 209 on the same date were as follows: " 1. The fire department of any city * * * may answer calls for assistance from territory outside the area regularly served and protected by such fire department * * * . While in the performance of their duties under this subdivision, the members of such departments and companies shall have the same immunities and privileges as if such duties were performed within the area regularly served and protected by such departments or companies. The legislative body of any city * * * by resolution may restrict such outside service and training to such extent as it shall deem advisable. Any such resolution shall continue in effect until amended or repealed by the adoption of a subsequent resolution. The officer in charge of any fire department or fire company shall be notified promptly of the adoption of any such resolution and of any amendment or repeal thereof. In a city * * * such action may be taken by local law or by ordinance instead of by resolution. As used in this section, the terms ' fire department ' and ' fire companies ' include all companies, squads, patrols or other units of such departments or companies, and the term ' call for assistance ' includes any call for aid resulting from the operation of a recognized plan for the furnishing of mutual aid in cases of fire or other public emergency. The provisions of this subdivision shall supersede the provisions of any general, special or local law to

the extent that there is a conflict between the provisions of this subdivision and such law, except that if any city has heretofore in any manner restricted the fire department of the city from engaging in service outside the city, such restrictions shall continue in effect until changed pursuant to the provisions of this subdivision.

" 2. Any loss or damage to, or expense incurred in the operation of, fire apparatus or other equipment answering a call for assistance from outside territory, as provided for in subdivision one of this section or otherwise, and the cost of any materials used in connection with such call, shall be a charge against and paid by the * * * town * * * which issued the call for assistance. No such claim, however, shall be allowed unless, within sixty days after such loss or damage has been sustained, or such expense has been incurred, or such materials have been used, written notice thereof be served by mail or otherwise on * * * the town clerk of the town * * * from which issued the call for assistance. * * *

" 4. In towns which do not contain a city, village, fire district, fire protection district, or fire alarm district, such loss, damage, expense or cost shall be a town charge audited and paid in the same manner as town charges."

To better understand the contentions of the respective parties it is necessary to consider the legislative history of " calls for assistance " and " mutual aid " as found in section 209 and the following sections. Section 209 was originally enacted in 1931 (L. 1931, ch. 332) and provided as follows:

" 1. Cities, villages, towns and/or fire districts may adopt an ordinance or ordinances authorizing and permitting their respective fire departments or fire companies to go to aid another city, village, town, or fire district, or territory outside of a city, village or fire district, in extinguishing a fire or fires therein, and while in the performance of their duties in extending such aid, the members of such departments shall have the same immunities and privileges as if performing the same within their respective cities, villages, towns, or fire districts. Any such ordinance may authorize the head of the fire department to extend such aid, subject to such conditions and restrictions as may be prescribed therein.

" 2. Any loss or damage to the fire apparatus of the city, village, town or fire district answering such call shall be a charge against and paid by the city, village, fire district or territory outside any such district, so issuing the call for assistance and

in which the fire occurred. No such claim, however, shall be allowed unless, within sixty days after such loss or damage has been sustained, written notice thereof be served by mail or otherwise on the comptroller or chief financial officer of the city, the town clerk of the town, or the village clerk of the village from which issued the call for assistance and in which the fire occurred."

It is to be noted that subdivision 2 of this enactment limited the liability of the municipality or fire district making the call to any loss or damage to its fire apparatus answering the call. In 1937, the section was amended (L. 1937, ch. 308). Minor changes were made in the first subdivision and the liability of the municipality or district making the call was broadened. Subdivision 2 of the section, as so amended, read as follows: " 2. Any loss or damage to fire apparatus or other equipment answering a call for assistance from outside territory, whether pursuant to an ordinance as provided for in subdivision one of this section or otherwise, together with the expense incurred in the operation of such fire apparatus and equipment and the cost of any materials used in connection with such call, shall be a charge against and paid by the city, village, town, fire district, fire protection district, fire alarm district, or territory outside any such district, which issued the call for assistance. No such claim, however, shall be allowed unless, within sixty days after such loss, damage or expense has been sustained, written notice thereof be served by mail or otherwise on the comptroller or chief financial officer of the city, the town clerk of the town, or the village clerk of the village from which issued the call for assistance."

In 1940, subdivision 2 of section 209 was again amended (L. 1940, ch. 342) to read as follows: " 2. Any loss or damage to, or expense incurred in the operation of, fire apparatus or other equipment answering a call for assistance from outside territory, whether pursuant to an ordinance as provided for in subdivision one of this section or otherwise, and the cost of any materials used in connection with such call, shall be a charge against and paid by the city, village, town, fire district, fire protection district, fire alarm district, or territory outside any such district, which issued the call for assistance. No such claim, however, shall be allowed unless, within sixty days after such loss or damage has been sustained, or such expense has been incurred, or such materials have been used, written notice thereof be served by mail or otherwise on the comptroller or

chief financial officer of the city, the town clerk of the town, or the village clerk of the village from which issued the call for assistance.''

To summarize the major changes in the section it is to be noted that the original law, as heretofore stated, limited liability to loss or damage to fire apparatus answering '' such call ''. The only '' call '' provided for by the enactment was one authorized by ordinance permitting the fire department to go to the aid of another territory. In 1937, however, the language was changed so that liability followed '' whether pursuant to an ordinance as provided for in subdivision one of this section *or otherwise* ''. (Emphasis supplied.) In 1937, liability was broadened so that in addition to loss or damage to the fire apparatus there was added '' the expense incurred in the operation of such fire apparatus and equipment and the cost of any materials used in connection with such call ''.

The 1940 amendment rearranged the language of subdivision 2 and the separate clause '' together with the expense incurred in the operation of such fire apparatus and equipment '' was omitted and the substance thereof was inserted near the beginning of the sentence.

Before considering the 1950 amendment to section 209 it might be helpful to digress and point out that in 1948, section 209-h relating to mutual aid for fire protection in Jefferson County was enacted. (L. 1948, ch. 835.) In the following year section 209-j was enacted. (L. 1949, ch. 250.) This section, as amended in 1950, authorized the Board of Supervisors in any county to establish a county mutual aid plan for use in cases of fire.

Subdivision 1 of section 209 was repealed by chapter 710 of the Laws of 1950, and a new subdivision was enacted. The pertinent provisions of this subdivision have heretofore been set forth. Attention should be directed, however, to the radical change made in the existing law. From 1931 to 1950, a call for assistance could be answered if an ordinance had been adopted authorizing the fire department to go to the aid of another territory. By this new enactment a fire department was authorized to answer such calls for assistance but this authority might be restricted by ordinance. This subdivision also contained for the first time the provision that '' the term ' call for assistance ' includes any call for aid resulting from the operation of a recognized plan for the furnishing of mutual aid in cases of fire or other emergency.''

It is the contention of the defendant that the complaint should be dismissed because it fails to allege that the city and town had adopted a recognized plan for the furnishing of mutual aid as required by section 209. It is impossible to agree with defendant's claim that the phrase "call for assistance" is defined in the section; rather it is stated therein that "the term 'call for assistance' includes any call for aid resulting from the operation of a recognized plan for the furnishing of mutual aid in cases of fire or other public emergency." Section 209 provides for two types of assistance — first a "call for assistance" which had been authorized under certain conditions by the section since 1931. By the amendment of 1950, the language of the section was broadened to permit participation in a mutual-aid program, which, as heretofore stated, had been authorized by the enactment of sections 209-h and 209-j in 1948 and 1949, respectively. The expression "call for assistance" was stated to include any call for aid resulting from the mutual-aid plan but it was not so defined and a fire department might continue to answer a call for assistance in the absence of a mutual-aid plan. While the word "includes" appearing in a statute may be deemed to be language of limitation, it seems clear that here it was used as a word of enlargement or as indicating the reverse of a restrictive intention, specifying a particular case inserted out of abundant caution. (Cf. *People ex rel. Estate of Woolworth* v. *State Tax Comm.*, 200 App. Div. 287.) The conclusion is reached that the amended complaint may not be dismissed upon this ground.

Turning next to the various claims asserted in the complaint, it seems clear that the allegations contained in paragraphs nine and ten state a cause of action for loss or damage to the pumper and its equipment within the meaning of subdivision 2 of section 209.

The defendant further contends that the portion of the complaint which alleges a claim for recovery of amounts paid for medical and hospital care furnished and salaries paid to three firemen injured in the collision does not state facts sufficient to constitute a cause of action. Plaintiff claims that these payments were made pursuant to the provisions of section 207-a of General Municipal Law and it appears that the injured firemen were entitled to the stated benefits under the provisions of that section. The plaintiff further contends that these sums constitute items of expense incurred by it in the operation of the pumper for which it is entitled to reimbursement under the provisions of subdivision 2 of section 209.

The narrow issue presented is the meaning of the phrase " expense incurred in the operation of fire apparatus ". The words are nontechnical and should be given their ordinary meaning. (*Matter of Palmer* v. *Spaulding*, 299 N. Y. 368, 371.)

In *Matter of Hooker* (173 Misc. 515, 519), Surrogate WINGATE had the following to say about the word " expenses ": " The signification of the word ' expenses ' is well established both in popular parlance and in law. It is the substantive form of the verb expend, which is derived from the Latin words ' ex,' meaning ' out,' and ' pendere,' ' to weigh,' referring to the ancient custom of payment by weight of cereals and other products. The definition of the word ' expense ' as contained in the Standard Dictionary is typical of the several other lexicographical statements which have been found: ' 1. (1) the laying out or expending of money or other resources, as time or strength; disbursement; expenditure; hence, drain on resources; detriment; loss; as, at the expense of health. (2) The habit of expending. 2. Money expended; outlay; charge; as, expenses for the journey.' "

Considering next the word " incurred ", this, of course, is the past tense of the verb " incur " which has been defined as " To assume, contract for, or become liable or subject to through one's own action; to become liable for or subject to; to bring on; to occasion or cause; to bring on oneself indirectly by some act; to render liable or subject to ". (42 C. J. S., Incur, p. 552.)

The remainder of the phrase under consideration is " in the operation of fire apparatus ". In *Matter of Central Greyhound Lines* v. *Graves* (274 App. Div. 679), the court had before it a statutory provision entitling one to reimbursement of a tax upon gasoline consumed in any manner except " in the operation of a motor vehicle upon or over the highways of this state ". It was said (p. 681): " The intention of the Legislature seems crystal clear. If the motor fuel is consumed, i.e., ' used ' in the operation of a motor vehicle upon the highways of the State, it is taxable. If it is consumed in any other manner, it is not taxable. It is difficult to perceive how the Legislature could have spoken more plainly. It is likewise difficult to perceive on what possible theory gasoline used for the sole purpose of warming motors of vehicles stored out of service on the petitioner's own parking lots, not to ready them for service, but only to keep them from freezing, can possibly be considered a consumption or use on the highways of the State. Respondents' determination in this regard finds no warrant in the record nor any reasonable basis in law and must be annulled."

If the language used is to be construed according to its natural and obvious import without resorting to a subtle or forced construction either limiting or extending its effect (*Cooper-Snell Co.* v. *State of New York,* 230 N. Y. 249, 255), it is impossible to construe the phrase " expense incurred in the operation of fire apparatus " to include the payments made by the plaintiff pursuant to the provisions of section 207-a. That was an expense *arising out* of the operation of the fire apparatus and not *in* the operation. Plaintiff in its brief refers to expenses " incurred in answering this call for assistance ". If the statute so provided an entirely different problem would be presented. The recovery is limited, however, to expenses incurred in the operation of the vehicle.

Furthermore, light is shed upon the legislative intent by a consideration of sections 205 and 207-a. The former section provides for certain payments to injured volunteer firemen and to the representatives of deceased volunteer firemen who are injured or killed in the performance of their duties. Subdivision four of the section specifically provides that if the injury is incurred while assistance is being rendered to another municipality or district the payments shall be a charge against the municipality or district issuing the call for assistance. This provision has been in the law for many years. (Cf. *Matter of Young,* 148 Misc. 431, affd. 244 App. Div. 45.)

Section 207-a was originally enacted by chapter 562 of the Laws of 1938 and in 1941, pursuant to recommendation of the Law Revision Commission (1941 Report, p. 427), was enacted as section 207-a of the General Municipal Law. (L. 1941, ch. 15.) By chapter 919 of the Laws of 1946, the last paragraph was added, which gave to the municipality a cause of action for reimbursement of those sums paid for salary and medical and hospital treatment as against any third party against whom the fireman had a cause of action.

If it had been the legislative intent that a municipality or fire district calling for assistance should be charged with the liabilities incurred by the provisions of section 207-a there is no reason why specific provision would not have been made therein as was done in section 205. The reason it was not done seems apparent. Payments under section 205 are made to volunteer firemen and are limited in amount. Payments under section 207-a are made to firemen of municipalities having a paid fire department and are unlimited in amount. They include all costs of medical and hospital treatment and full salary during the disability.

It is impossible to reach the conclusion that when the Legislature provided for the payment of " expenses incurred in the operation " of this fire pumper it intended that the defendant should be called upon to reimburse the plaintiff for the payments made by the latter pursuant to the provisions of section 207-a. While the amounts here involved represent less than 10% of the total claim, it is not difficult to picture a situation where several paid firemen might receive injuries resulting in permanent, total disability to each. The construction plaintiff asks the court to place upon the words of the statute might place a burden upon a small municipality or fire district of paying thousands of dollars annually over a period of many years for salaries paid by the employing municipality to such permanently disabled firemen. In the absence of clear legislative intent the words of the statute should not be deprived of their ordinary meaning. Nearly 100 years ago it was said that " it is very dangerous for courts to launch out too far in searching into the intent of the legislature, when they have expressed themselves in plain and clear words." (*Burch* v. *Newbury*, 10 N. Y. 374, 390.)

Considering next paragraphs of the complaint numbered thirteen, fifteen and sixteen. The conclusion is reached that for the reasons heretofore stated these paragraphs do not state facts sufficient to constitute causes of action. In other words, the amounts paid or claimed to be due are not expenses incurred in the operation of the fire apparatus. There are other reasons, however, that make the causes defective.

Paragraph thirteen of the complaint alleges the bringing of the action against the city and others by the representative of the estate of the deceased fireman; that an offer of settlement was made in open court and judgment was entered against the plaintiff in this action in the sum of $15,000 of which amount $1,500 was allocated to conscious pain and suffering of the deceased; that such judgment has been paid. The draftsman of the complaint has carefully avoided any mention of the word negligence but it is apparent from all the facts set forth that the action was brought pursuant to the provisions of sections 119 and 130 of the Decedent Estate Law to recover damages for injuries received by the decedent and " for a wrongful act, neglect or default, by which the decedent's death was caused ".

In determining the sufficiency of this complaint the court is not required to pretend ignorance of matters of common knowledge and public record. Judicially noticed, such matters may be here considered as though embodied in the complaint. (*Walsh* v. *Trustees of N. Y. & Brooklyn Bridge*, 96 N. Y. 427, 438; *City*

*of Buffalo* v. *New York Central R. R. Co.,* 125 Misc. 801, 804, affd. 218 App. Div. 810, affd. 271 N. Y. 658; *Hakala* v. *Van Schaick,* 171 Misc. 418, 422.)

In other words, plaintiff does not seek in paragraph thirteen to recover expenses incurred in the operation of the fire apparatus but seeks to recover the amount of a judgment it has paid in an action brought against the city and Harry J. Davies, the operator of the fire pumper, to recover damages for the negligence or wrongful act of the plaintiff or its employee. (Cf. General Municipal Law, § 50-c.) In other words, the plaintiff seeks to have the words of the statute — " expenses incurred in the operation of the fire apparatus " — in effect construed as a provision that the defendant should assume the liability to the extent that it should save the plaintiff harmless for damages for personal injuries and the resulting death of a fireman riding on the pumper involved in the collision.

In the first place the plain reading of the language of the statute may not be so construed. Furthermore, in considering this paragraph of the complaint other well-recognized rules of statutory construction must be considered. In *Miller* v. *Town of Irondequoit* (243 App. Div. 240, 242, affd. 268 N. Y. 578), it was said: " ' If a statute creates a liability where otherwise none would exist, or increases a common-law liability, it will be strictly construed. A statute, even when it is remedial, must be followed with strictness, where it gives a remedy against a party who would not otherwise be liable. The courts will not extend or enlarge the liability by construction; they will not go beyond the clearly expressed provisions of the act.' (Sutherland Stat. Constr. § 371; *Leppard* v. *O'Brien,* 225 App. Div. 162, 164; affd., 252 N. Y. 563.) ".

The plaintiff in substance seeks to have this statute construed as one to indemnify it against all loss or damage incurred in the operation of the fire pumper on this occasion. It is recognized that the obligation to indemnify may result from implied contract or may be imposed by law. When the Legislature, in 1929, removed the immunity of municipalities from tort liability there were enacted provisions which expressly saved harmless and assumed the liability for the negligence of certain stated persons operating municipally-owned vehicles under certain conditions. (See General Municipal Law, § 50-b.) Similar examples of statutory indemnification are found in the same law, sections 50-c and 50-d.

In speaking of contracts of indemnity the rule was stated in *Thompson-Starrett Co.* v. *Otis Elevator Co.* (271 N. Y. 36, 41),

that such a contract will not be construed to indemnify a person against his own negligence unless such intention is expressed in unequivocal terms. There appears to be no reason to apply a different rule in construing the statute before us. The words " expenses incurred " must be given their ordinary meaning. To sustain the contention of the plaintiff would require a finding in effect that any political entity calling for assistance in case of fire thereby became an indemnitor and agreed to save the answering municipality harmless for the negligence of the latter's employee in the operation of fire apparatus.

If the mandate that words are to be given their ordinary meaning is to be obeyed, it is impossible to spell out from the words in question what amounts to an obligation to indemnify for the losses in question. Such a finding would create a liability where none existed at common law and even if the statute is considered remedial it must under such circumstances be strictly construed.

. It is recognized that the plaintiff was on its way to assist the defendant when this accident occurred. It need only be pointed out, however, that the statute had its safeguards. The Legislature did not compel the plaintiff to answer this call. The latter was authorized to adopt an ordinance restricting " such outside service  *  *  *  as it shall deem advisable." (§ 209.) This gave the city the widest latitude to act, including the prohibition of answering any calls, or providing for the answering of calls where the municipality calling had agreed to indemnify the city or protecting its apparatus by adequate liability insurance when making such calls and protecting itself from the liabilities imposed by section 207-a by insurance. (3 Op. St. Comptroller, 1947, p. 358.)

The conclusion is reached that for the reasons heretofore stated the paragraphs of the complaint numbered eleven to sixteen, inclusive, fail to state causes of action. In addition, paragraph fifteen fails to state a cause of action because it is shown therein that plaintiff has a complete defense thereto and has incurred no expense in connection therewith. Furthermore, paragraph sixteen fails to state an actionable cause for the further reason that it appears on the face thereof that no expense has been incurred but only a claim alleged and action brought against the city.

It has been heretofore decided that paragraphs nine and ten of the complaint state facts sufficient to constitute a cause of action. By section 476 of the Civil Practice Act " a judgment may be rendered by the court as to a part of a cause of action ".

The test to be applied is whether it is possible to divide the claims or cause of action so that an effective judgment can be rendered as to part, without mutilation of the whole. (*Lowe* v. *Lowe,* 265 N. Y. 197, 203.)

In *Kane* v. *Walsh* (295 N. Y. 198, *supra*), it appeared that the Appellate Division had affirmed a judgment of Special Term dismissing the complaint upon defendant's motion under rule 106 of the Rules of Civil Practice. The court decided that the first cause of action and a portion of the second cause of action had been properly dismissed but that another portion of the second cause of action stated an actionable cause. The court, following the rule laid down in *Lowe* v. *Lowe* (*supra*), found that an effective judgment could be rendered sustaining a part of the complaint without fatal mutilation of the entire pleading. It modified the judgment dismissing that part of the second cause of action found to be actionable.

Although a complaint contains but one cause of action and the various acts complained of are set forth in separately designated paragraphs it has been held that on a motion addressed to the complaint portions of the cause of action may be dismissed if the allegations are severable. (*Myer* v. *Myer,* 271 App. Div. 465, 476, affd. 296 N. Y. 979.)

The motion of the defendant is granted to the extent of striking from the complaint paragraphs numbered eleven to sixteen, inclusive, and is in all respects denied, without costs to either party.

Submit order.