83 N.J. Super. 58 (1964)
198 A.2d 822
JOHN VOLEK, PETITIONER-APPELLANT,
v.
BOROUGH OF DEAL, NEW JERSEY, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 16, 1964.
Decided March 24, 1964.
*60 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Charles B. Klitzman argued the cause for appellant.
Mr. James A. Robottom argued the cause for respondent (Messrs. Haskins, Robottom & Hack, attorneys; Mr. Robottom on the brief).
The opinion of the court was delivered by KILKENNY, J.A.D.
In his petition for workmen's compensation, petitioner claimed that he had injured his left hand on March 8, 1960, while assisting members of the Deal Fire Department in raising a ladder during their fire-fighting and rescue operations at the Introcaso home in that municipality. He was not an employee of the Borough of Deal, or a member of its fire department. He bases his claim to compensation upon N.J.S.A. 34:15-74 which, by definition in N.J.S.A. 34:15-43, extends the benefits of the act not only to enrolled members of a volunteer fire department or rescue squad, but also to every "authorized worker" who is injured while participating in the fire-fighting or rescue activities.
The Division found that petitioner qualified as such an "authorized worker" and made an award in his favor. The County Court, on appeal, reached the opposite conclusion and dismissed the claim petition. Petitioner appeals from the judgment of the County Court.
N.J.S.A. 34:15-43 provides, so far as pertinent here:
"As used in this section and in section 34:15-74 of this chapter, the term `authorized worker' shall mean and include, in addition to an active volunteer fireman and an active volunteer first aid or rescue squad worker, any person performing any public fire duty or public first aid or rescue squad duty, as the same are defined in this section, at the request of the chief or acting chief of a fire company or the president or person in charge of a first aid or rescue squad for the time being."
*61 Certain testimony of petitioner is uncontradicted. On March 8, 1960, about 1:40 A.M., he was driving to his home in Deal from his job as a custodian in the Asbury Park High School, when he noticed a house on fire at Norwood and Phillips Avenues, in Deal. He drove forthwith to the firehouse, only two blocks from the scene of the blaze, rang the bell and pounded on the firehouse door to rouse the firemen therein to respond to the fire. The two firemen who were there then drove fire-fighting equipment to the scene, petitioner preceding them there.
The firemen testified that they were roused by telephone call prior to petitioner's arrival at the firehouse. However, it is what happened at the scene of the fire that is crucial in resolving the basic issue herein. We shall assume as true petitioner's uncontradicted and uncorroborated testimony that he was helping a fireman or firemen to raise a ladder to the porte-cochere of the blazing Introcaso home to rescue occupants of the building standing on the roof of the porte-cochere, when a fireman gave a pull on the ladder and petitioner's left hand was caught and injured. The factual question in dispute is, "Who, if anyone requested or authorized petitioner to participate in raising the ladder?" Petitioner claims that one of the two firemen, who responded from the firehouse and who were the only persons there with him when he was injured, asked him to help with the ladder. He did not know the name of the fireman who asked him to help, and never went to the firehouse or elsewhere thereafter to find out his name. The only description he could give of this fireman was that he was a "big-faced" fellow and "sort of husky built."
Deal has generally a volunteer fire department, composed of 15 active and 30 exempt members. The department has a chief and an assistant chief. Besides the volunteers, there are three paid firemen who drive the rolling equipment. One of the three paid drivers was off-duty on the night of this fire. Therefore, he could not have authorized petitioner to help. The other two paid drivers who did respond and drove fire *62 equipment to the scene were the elder James J. Reeman, who drove a pumper, and his son James A. Reeman, who drove a fire engine or truck which held ladders. The father is 5' 5" tall and weighs 155 pounds. The son is 6' 1" tall and weighs 185 pounds. The record does not indicate whether either of them would fit petitioner's description. Though petitioner could have gone to the firehouse to identify them there, or could have done so when they appeared at the compensation hearing, he never did, either prior to or at the original hearing or supplemental hearing.
The compensation judge found that petitioner was a credible witness and accepted his version that one of the two firemen had requested him to help. He also interpreted N.J.S.A. 34:15-43 liberally and ruled that, although petitioner admittedly was not authorized by the chief or assistant chief of the fire department to help, the unknown fireman who did make the request was a "person in charge," so as to make the beneficent provisions of this remedial legislation applicable.
However, the compensation judge denied an application by the attorney for the borough for an adjournment of the hearing, in order that he might produce the two paid firemen to rebut petitioner's testimony that one of them had authorized petitioner to help with the ladder. This refusal of an adjournment was deemed erroneous by the County Court and the matter was remanded to the Division to take the testimony of these two firemen, the County Court meanwhile retaining jurisdiction. Thereupon, there was a supplemental hearing in the Division, at which the Reemans, father and son, testified, and that testimony was forwarded to the County Court.
Petitioner's attorney conceded at oral argument before us that the father, James J. Reeman, could not have been the one who requested petitioner to help. The elder Reeman's clear and uncontradicted testimony shows that he drove the pumper to a point near the fire, connected the pumper to a nearby hydrant, and stayed with his equipment throughout. *63 He handled no ladders and never asked petitioner, or anyone else, to help with any ladders.
The testimony of fireman James A. Reeman, the son, directly contradicted petitioner in several vital particulars. Significantly, the compensation judge found him to be a "very credible" witness. This fireman, the only one of the two responding from the firehouse who could have asked petitioner to help  and petitioner limited the requesting fireman to one of these two  testified that he did not request any help from petitioner or any other nonmember of the fire department. He stated that another fireman, Fenwick White, helped him to carry the 24-foot extension ladder from the fire truck to the porte-cochere. His father-in-law, Joseph Ehmann, also a member of the local fire department, was first up the ladder in the rescue operation. There were many people at the scene when they arrived and thereafter. He could not say for sure that no one else had touched the ladder, but he was most firm in his testimony that he had not authorized any person, not a fireman, to extend any help in raising the ladder, or otherwise.
The County Court agreed with the Division that N.J.S.A. 34:15-43 should be liberally construed so as to regard one as an "authorized worker," if his aid is enlisted by "a person in charge" of the firefighting and incidental rescue operation, even though that person in charge is not the chief or assistant chief of the fire department, but only an ordinary member of the fire department. We concur in that interpretation, mindful of the legal philosophy of giving a broad, liberal interpretation to coverage under our Workmen's Compensation Act. We also feel that the volunteer fireman and rescue worker, who risk life and limb to save others and their property, without any monetary reward, are entitled to an indulgent application of the law.
On the other hand, we may not disregard the legislative limitation that only "authorized workers" are embraced within the law. Undoubtedly, the Legislature did not want to extend workmen's compensation benefits to everyone who *64 rushes upon the scene and sustains injury. An unauthorized, foolhardy intermeddler can cause great harm, not only to himself but also to others. A municipality may not be burdened with workmen's compensation payments in favor of such an unauthorized injured person, no matter how noble his motive might have been or how great the help he may have rendered.
Ordinarily, we are influenced in large measure by the trial hearer's appraisal of the credibility of the witnesses. But the appraisal here of the compensation judge presents us with an impasse, since he found petitioner "credible" and respondent's witness, fireman James A. Reeman, who gave testimony at variance with petitioner's, "very credible." We have made our own independent study of the record and find a lack of frankness and credibility in portions of petitioner's testimony, which may have escaped the trier of the facts. For example, petitioner lost no salary during the weeks of his temporary disability. He was paid in full. Yet, when he was asked if he had received his "salary" during this time, his answer was "no." It was only when he was apparently driven into a hard corner with his obviously false answer that he equivocated and said that he had received no "compensation," meaning "workmen's compensation" payments.
The County Court properly concluded that petitioner had not sustained the burden of proving by a preponderance of the evidence that he was authorized by any person in charge of this fire or rescue operation to perform the alleged act, which he claims caused injury to his hand.
Accordingly, the judgment of the County Court is affirmed.