**CITY OF STROUD and the State Insurance Fund, Petitioners,**

**v.**

**Bessie L. LAFFOON and the State Industrial Court of the State of Oklahoma, Respondents.**

**No. 41020.**

Supreme Court of Oklahoma.

March 15, 1966.

Mont R. Powell, Moraul Bosonetto, Oklahoma City, for petitioners.

B. E. Bill Harkey, Oklahoma City, Richard James, Stroud, Charles R. Nesbitt, Atty. Gen., for respondents.

JACKSON, Vice Chief Justice.

This is an original proceeding for the review of an award of the State Industrial Court in favor of Bessie L. Laffoon, executrix of the estate of Warren Eugene Laffoon, and against his employer, the City of Stroud, and the insurance carrier, the State Insurance Fund.

Claimant's decedent was a member of the volunteer fire department of the City of Stroud, and it is agreed that he died as the result of a heart attack he suffered while fighting a fire in the town of Davenport, seven miles from Stroud. Workmen's Compensation Insurance coverage on the members of the volunteer fire department had been purchased by the City of Stroud from the State Insurance Fund.

In this court petitioners, the City of Stroud and the State Insurance Fund, argue only two propositions.

The first is to the general effect that Laffoon's death did not "Arise out of and in the course of" his employment by the City of Stroud for the reason that it occurred outside the corporate limits of Stroud and inside the limits of Davenport, seven miles away.

Petitioners concede that municipal corporations are authorized by 11 O.S.1961, § 339, to contract to give or receive fire protection to or from other municipal corporations, but argue that there is no evidence of such a contract in this case.

We do not agree. There was competent evidence that a reciprocal arrangement existed among several towns in the area including Stroud and Davenport for mutual assistance in fire fighting. Under the arrangement, the City of Stroud paid its own firemen, whether the fires were in Stroud or not, and other towns presumably did the same. There was evidence that fire departments from other towns, including Davenport, had helped in fighting fires in Stroud under the agreement. The fact that the reciprocal agreement was not in writing is not fatal, since the cited section of the statute does not require it to be in writing. In this instance Stroud's assistance to Davenport was clearly within the terms of the agreement.

Petitioners also cite 11 O.S.1961, § 342, which provides in part as follows:

"All municipal firemen, full paid or volunteer, attending and serving at fires or doing fire prevention work or rescue, resuscitation, first aid, inspection or any other official work outside the corporate limits of a municipality as hereinabove provided shall be considered as serving in their regular line of duty as full as if they were serving within the corporate limits of their own municipality * * *."

In their briefs, petitioners in effect ask this court to construe the phrase "outside the corporate limits of a municipality" to read "outside the corporate limits of *any* municipality".

■ We do not agree that it should be so strictly construed. 11 O.S.1961, §§ 339 through 344, were all parts of the same legislative act, House Bill 440 of the 1939 Legislature. The first sentence of Sec. 339 in effect defines the term "municipal corporation" as including any "city, town, *township*, village, or *fire protection district*" (emphasis supplied), thus including both urban and rural areas within the definition. The second sentence of Sec. 339, among other things, authorizes any such municipal corporation "to contract to give or receive such protection to or from one or more such municipal corporations". One of the general purposes of House Bill 440 was obviously to enable municipal corporations, whether urban or rural, to cooperate with each other for fire protection and fire fighting purposes. It would be unreasonable to conclude that the legislature intended, in Sec. 339, to authorize a city or town fire department to operate in other areas, either rural or urban, and in Sec. 342, to grant to the individual firemen the status of "serving in their regular line of duty" only when fighting fires outside the limits of *any* municipality. We hold that, under Sec. 342, members of a city or town fire department, while engaged in fighting a fire in some other city or town pursuant to a contractual arrangement such as existed in this case, are "serving in their regular line of duty". It follows that Laffoon's death arose "out of and in the course of" his employment.

The cases cited by petitioners under this proposition are all distinguishable on the facts. In re Gilbert, 165 Misc. 222, 300 N.Y.S. 790, was decided upon New York statutory provisions which have no counterpart in Oklahoma. In Volek v. Borough Deal, 83 N.J.Super. 58, 198 A.2d 822, and Town of Milton v. Industrial Commission, 230 Wis. 168, 283 N.W. 287, the claimants were bystanders who were not members of any fire department. In this case, it is agreed that Laffoon had been a member of the Stroud fire department since 1949.

Petitioners' second proposition is to the effect that the City of Stroud failed to comply with a mandatory provision of the policy of insurance and that for this reason the policy was a nullity.

■ The provision involved was contained in an endorsement to the policy, and it provides as follows:

> "Provided further that the City Clerk of Insured shall furnish insuror on or before the 15th day of January of each year the number of men in said organized Fire Department, together with the names, date of appointment and date of expiration of term of service. * * *.

> "Compliance with these provisions is mandatory * * *."

The insurance policy of which the endorsement was a part was dated April 2, 1963 and was effective for one year beginning June 1, 1963. Undisputed evidence in the record before us is to the effect that on December 31, 1963, the City Clerk of Stroud mailed the information required by the endorsement to the State Insurance Fund. We therefore hold that the City complied literally with the requirements of the endorsement, and the fact that Laffoon's death occurred on August 30, 1963, before the information was submitted, in no way lessens the effectiveness of the policy.

As reflected by the State Industrial Court order under review, the court found, on this point, that the State Insurance Fund "by its conduct and acceptance of premiums paid by insured, has waived the mandatory provisions of the insurance policy in force * * *". This finding was apparently made upon the theory that evidence of the contractual relations of the City and the Fund was not to be restricted to the one year covered by the policy in question but that the intent of the parties was to be ascertained with reference to the entire course of their contractual relations, ex-

tending over a period of several years. In this connection it was shown that the insurance policy for the previous year (ending June 1, 1963) had contained the same endorsement, and that no list of names had been furnished prior to January 15, 1963.

 Even under this view of the case, the order under review must be sustained. There was uncontradicted evidence that the Fund had regularly audited the books of the City; that the list of names was at all times available to the Fund, and that in spite of the failure of the City to furnish the list by January 15, 1963, the Fund had issued a new policy, and had accepted payment of premiums for the same, for the year beginning June 1, 1963. It is well settled that the renewal of a policy with knowledge of a ground for forfeiture ordinarily waives the forfeiture. 29A Am.Jur. Insurance, Sec. 1073; 45 C.J.S. Insurance § 716a (1). In this connection it is noted that no actuarial disadvantage resulted to the Fund by reason of the fact that it did not have the list of the names of the members of the fire department; the record affirmatively shows that it collected premiums based upon the total payroll of the fire department.

The award is sustained.