LILLIAN R. McANNEY, PETITIONER-RESPONDENT, v. GAL-
LOWAY TOWNSHIP, A MUNICIPAL CORPORATION, DE-
FENDANT-PROSECUTOR.

Submitted January 18, 1938—Decided May 19, 1938.

Before Justices BODINE, HEHER and PERSKIE.

For the prosecutor, *Bolte & Miller.*

For the respondent, *Garrison & Weaver.*

The opinion of the court was delivered by

HEHER, J.   The essential point in controversy is whether
an "active volunteer fireman"—in this instance the chief of
a fire company—while engaged, through the instrumentality
of department apparatus known as the "pumper," in drawing
an accumulation of water from the cellar of a citizen of the
municipality, and in returning the vehicle to the company's

station—all pursuant to a settled custom—, is within his "line of duty," so that injury or death sustained while so employed is classable as the emanation of an accident arising out of and in the course of his employment, within the intendment of the Workmen's Compensation Act of 1911, as supplemented by chapter 355 of the laws of 1931. *Pamph. L.* 1911, *pp.* 134, 763; *Pamph. L.* 1931, *p.* 873; *Rev. Stat.* 34:15-43.

The compensation bureau found that the deceased fireman who suffered mortal injuries as the result of the overturn of the vehicle on its return trip to the firehouse, was within the statutory classification, and made an award of compensation accordingly. The Atlantic Pleas affirmed the judgment.

We find nothing of substance in the municipality's assignments of error.

*First:* It was proper to admit evidence that this particular service was rendered by the volunteer fire companies functioning in the municipality in accordance with a long established custom.

The municipal ordinance creating this particular fire company—for "the protection of life and property from fire"—vested in the chief, the assistant chief and the captain, in the order named, "full command at a fire, or alarm of fire going or returning from same," and "control of all apparatus," and charged them with the duty of maintaining the apparatus "in serviceable order;" and it is the insistence of prosecutor that the deceased, by accepting membership in the fire company, undertook as a contractual obligation "to perform the duties as" thus "defined" in the ordinance; and that in such circumstances "evidence of custom to aid in the construction of the ordinance was not admissible in the absence of any ambiguity or doubt" in its language.

The fallacy of this contention is manifest. The prescription of duties in the ordinance was plainly not designed to be exclusive. The provision relates only to the commanding authority. It specifies the duties of the commanding officers, and to some extent deals with the manner of the exercise of the supervisory function. More than that it does not purport to do. Furthermore, there is evidence tending to show that

this service was considered essential to the elimination of fire hazards incident to short circuits caused by flooded cellars, and that it was generally rendered with the sanction of the governing body. If the ordinance be given the proposed narrow interpretation, these fire companies could not, even at the direction of the administrative superior or the governing body itself, render the essential services that have always been regarded as incidental to their operation, *e. g.*, inspection to eliminate fire hazards, first aid, safeguarding life in emergencies not associated with fire, and so on; and this certainly was not within the view of the municipal governing body or those accepting membership in the fire company.

*Second:* And we find the deceased suffered his fatal injury by accident arising out of and in the course of his employment. We do not apprehend that the legislature, by the phrase "in the line of duty" contained in this supplement to the Compensation Act, intended to qualify the basic provision of the statute touching the relationship of the injury to the employment. Such a purpose is not to be presumed from the mere use of different language, especially when the phraseology has long been associated with this particular branch of the public service; it must be expressed in clear and definite terms admitting of no doubt of the intention. A fireman injured "in the line of duty" expressly assigned, or reasonably to be implied, suffers injury by accident arising out of and in the course of his employment. See *Campanile* v. *Asbury Park,* 118 *N. J. L.* 480. The case of *Scott* v. *Jersey City,* 68 *Id.* 687, is not in point.

Nor is there any merit in the contention that the deceased was not, when the accident occurred, engaged in the performance of the duties assigned to him as company chief by section 8 of the ordinance. As pointed out, that section merely assigns and regulates the exercise of the commanding authority. It does not restrict the commanding officers to the duties so specified; the contrary is implicit in the language employed. And a firmly fixed custom had indubitably sanctioned the course thus taken by the deceased as within the line of his duty. In the circumstances, this service could not

well have been denied by the commanding officer of the fire company without the approval of the proper municipal authority.

The judgment of the Atlantic Common Pleas is accordingly affirmed, with costs.