Passaic County Court of Common Pleas.

FRANCES MOORE, PETITIONER-APPELLEE, v. CITY OF PATERSON, RESPONDENT-APPELLANT.

Decided April 3, 1940.

For the petitioner-appellee, *Nathan Rabinowitz.*

For the respondent-appellant, *Salvatore D. Viviano.*

Delaney, C. P. J. This is an appeal from the Workmen's Compensation Bureau in which Deputy Commissioner Stahl made an award in favor of the petitioner.

The uncontroverted facts are: that Mrs. Frances Moore, the widow of Edward Moore, who in his lifetime was a fireman employed by the city of Paterson, and had been so employed for thirty-one years, was married to the petitioner thirty-six years and they had lived together continuously. The household consisted of the petitioner, decedent and three children over sixteen years of age. On the day in question, July 11th, 1938, at about five P. M., a very warm and humid day, after partaking of sandwiches and coffee in the engine house, the decedent was called to active service by the sounding of an alarm. Attired in regular fire equipment, helmet, boots and rubber coat, he responded to the call taking his position on the back of the hose cart. The fire was at the Wright Aeronautical plant located at Beckwith avenue and Lewis street in the city of Paterson. One member of Fire

Company No. 7 to which the decedent was attached was on vacation, and another at home for supper, leaving the company with three men instead of five the number prescribed. On arriving at the scene of the fire the decedent proceeded to pull the hose off the truck and connect the siamese, which is attached to the hose, to the hydrant. The siamese attachment weighing about twenty-five pounds contains two outlets, its purpose is to provide an extra hose connection. Leaving the hydrant the decedent went to the scene of the fire about four or five hundred feet distant where he was directed by a superior officer to turn on the hydrant. He was seen running as he approached his superior officer. In pursuance to the instructions he ran seventy-five feet in the direction of the hydrant at which point the vision of the commanding officer was obstructed by the corner of the building and he could no longer follow the course or conduct of the decedent. The body of Mr. Moore was lying at the hydrant with the wrench or hook with which the water is turned on lying on the ground a few feet away. The water was turned on, an operation which requires certain physical effort. Captain Kennedy said, "It required eight or ten turns to get the water, that is because the valve is down in the ground. There is plenty of difficulty in turning it on." The proofs show a facial expression of physical distress at the time of the collapse of decedent, emission of food stuff from the mouth, the decedent falling face down. The fire department physician, who was called when the incident complained of was noticed, and who was in attendance at the fire in compliance with his duty, gave it as his opinion that death was due to acute cardiac dilatation.

The respondent contends that decedent's death was not due to injuries sustained in an accident arising out of and in the course of his employment but rather that his death was due to natural causes.

The petitioner contends that while the decedent was suffering from a cardiac degeneration, a hypertension heart, a beginning decompensation, arteriosclerosis, which condition was found to be present July 8th, 1938, by Dr. Cremens when he examined the decedent at his behest for the purpose of securing increased compensation from the United States gov-

ernment as a Spanish-American War veteran, and so reported to the Veterans' Bureau at Washington recommending an increase of pension, if his activities in his employment aggravated such physical illness and death ensued as a result thereof, the decedent sustained an accident arising out of and in the course of his employment within the purview of the Compensation act and his dependents are entitled to compensation.

It seems to me it cannot be gainsaid that a fireman engaged in answering an alarm of fire and performing the duties necessarily connected therewith is under unusual strain and excitement and this no matter what his experience in that particular avocation or calling.

As usual there is some difference of opinion on the part of the physicians. A careful analysis of all the evidence leads me to the conclusion that the petitioner has maintained the burden cast upon her by law and has established by the greater weight of the evidence a complete chain of causation which brought into acute activity the diseased condition of Mr. Moore which hastened or caused his death while in the performance of his duties as a fireman. *Geizel* v. *The Regina Co.*, 96 *N. J. L.* 31; 114 *Atl. Rep.* 328; *affirmed*, 97 *N. J. L.* 331; 116 *Atl. Rep.* 924; *Winter* v. *Atkinson Frizelle Co.*, 88 *N. J. L.* 401; 96 *Atl. Rep.* 360.

A rather belated memo was submitted by respondent which is not properly before the court, but it may not be amiss to say, however, in *Campanile* v. *The City of Asbury Park*, 118 *N. J. L.* 480, Mr. Justice Parker speaking for the court said, "The petitioner was employed as a policeman and was on police duty at the time of the alleged accident. He is therefore within the purview of section 1 of chapter 145 of the laws of 1913 (*Pamph. L.*, *p.* 230) as amended in 1927 (*Pamph. L.*, *p.* 239) and further amended in 1931 (*Pamph. L.*, *p.* 873)." I am unable to differentiate the case at bar. *Fire Commissioners, &c.,* v. *Morris*, 12 *N. J. Mis. R.* 153; 170 *Atl. Rep.* 221; *Jersey City* v. *Borst*, 90 *N. J. L.* 454; 101 *Atl. Rep.* 1033.

*R. S.* 40:174-201 is not applicable. See *McAnney* v. *Galoway Township*, 120 *N. J. L.* 311; 199 *Atl. Rep.* 369.

The conclusion of the bureau should be affirmed.