PASSAIC COUNTY COURT OF COMMON PLEAS.

LORETTA VAN NESS, PETITIONER-APPELLEE, v. BOR-
OUGH OF HALEDON, RESPONDENT-APPELLANT.

Decided February 4, 1946.

For the petitioner-appellee, *Marcus & Levy*.

For the respondent-appellant, *William A. Davenport*.

DELANEY, C. P. J.   This is an appeal from the finding of
facts and determination and rule for judgment of the Work-

men's Compensation Bureau, in which the petitioner was granted compensation for herself and her two infant sons, dependents of Charles Van Ness, deceased, her husband and the father of her two children.

Decedent was employed by the DeCora Company in Haledon and was a regularly appointed marshal on the Haledon police force. As a police marshal he was subject to call twenty-four hours a day, and in case of emergency would be called any one of the twenty-four hours, and Officer Van Ness was often called while at work with the DeCora Company. It was customary for Officer Van Ness to report to the police station every day, whether he was assigned to duty or not, and for the chief, if he was there, to send him out to assist the regular officer when a call came in. Whether "detailed" or not, a marshal was to assist a regular officer. These were not "actual duty assignments," but emergency assignments, taken care of as they arose. For a marshal to be detailed to an actual duty assignment, the need of such detail would have to be known in advance, when the schedule for the police assignments was made up.

The three boroughs of Haledon, North Haledon and Prospect Park had a reciprocal and mutual arrangement by which a call coming in to the police department of one borough would be answered by the police department of another borough if that were necessary.

On the night of July 10th, 1944, decedent was attending a court session of the North Haledon Police Court as a witness to a motor vehicle violation in which he had assisted Captain Stutz, of the North Haledon police, a few days previously. A radio call came to the Haledon police department and advised that department that a woman had fallen down a flight of stairs in a house on Saw Mill Road in North Haledon, and that she was in serious condition. Because Captain Stutz, of the North Haledon police, was attending the North Haledon Police Court, and therefore was out of call, Officer Romanelli, of the Haledon police, knowing this, picked up the call, drove to the North Haledon police station to ascertain the location of the home where the emergency had occurred. As he drove into the yard of the police station,

Captain Stutz came running out of the door. The emergency had also been reported to the North Haledon police by telephone. Captain Stutz, with two councilmen, got into the North Haledon police car, and Officer Van Ness, the decedent, into the Haledon police car, which Officer Romanelli was driving.

The two cars proceeded to the scene of the emergency, Captain Stutz and Officer Romanelli taking charge at the side of the woman, Officer Van Ness at the head of the stairs. Deciding that the woman needed an ambulance, Captain Stutz went to the North Haledon police car to summon the ambulance by radio. Officer Van Ness followed him, and when the Captain was unable to make contact with the ambulance corps, Van Ness suddenly remembered that that night the corps was having a meeting in the corps' rooms, attached to the ambulance station. There was no phone in the corps' rooms. He said, "They are down in the corps' rooms. I will go for them." He got into the Haledon police car alone. He drove at a fast speed, with siren blowing, red flasher working, and at one obstructed corner rounded it on two wheels, and pulled up in front of the ambulance station.

Mr. Brown, a police marshal of the Haledon police department, who was also the chief of the Haledon Ambulance Association, which had just adjourned its meeting, saw the advance of the police car and went to the curb to meet it. Decedent, excited and flushed, yelled, "Dave—Dave—get the ambulance right away, right away, North Haledon, North Haledon, Saw Mill Road, Saw Mill Road, a lady, a lady— follow me, follow me," and turned the police car around, drove twenty-five to thirty-five feet and stopped. Brown, now at the wheel of the ambulance, pulled behind the stationary police car, blew his horn, and then hurried to the police car, where he found Van Ness slumped over the wheel, waving his arms, and muttering, "The woman, the woman, the woman." Van Ness was immediately placed in the ambulance and driven to the hospital, where he died about ten minutes after arrival, before he could be examined.

The question in this case hinges on whether there was an employer-employee relationship at the time of the accident.

The respondent contends that there was not, and could not be, according to the ordinance, unless the marshal was engaged in "actual duty assignment" directly by the chief, and that Van Ness was not engaged in an "actual duty assignment" because he was not paid for the work he did on July 10th, nor could he have been, since the chief had not actually assigned him.

The ordinances under consideration are:

"The Council of the Borough of Haledon hereby ordains that a Police Department be and hereby is established in this Borough consisting of a Chief of Police and such policemen and marshals as shall hereinafter be appointed." Section 1, Ordinance 81.

"The compensation of the members of the department shall be determined by the Council. The marshals shall be paid only for such time as they shall be engaged in actual duty assignment of the Mayor, Police Committee, or Chief of Police." Section 13, Ordinance 81.

"All orders and assignments for any member of the Police Department from the Mayor or Police Committee shall be made to and through the Chief of Police." Section 14, Ordinance 81.

We do not agree with the respondent's contention, for we conclude because of the very nature of a marshal's job there were other assignments than actual duty assignments. Had Officer Van Ness been in the police station when this emergency call came through and had the chief also been there, and had the chief said, "Van Ness, go with Officer Romanelli," can we say there would have been no relationship of employer-employee because Officer Van Ness was not on an "actual duty assignment?" Was there no relationship of employer and employee whenever Van Ness was called on the twenty-four hour subject-to-call arrangement? Van Ness was a marshal and was in the performance of his duties at the time. Some duties, emergency, he performed without compensation; other duties, which were detailed beforehand, "actual duty assignments," he was paid for. He and the borough realized the nature of the employment, that much or some of it would be emergency, that if it were he could not be actually assigned,

since actual assignment of necessity meant knowledge of the need for his services in advance.

Notice that the ordinance does not read all "actual duty assignments," but reads "All orders and assignments." These orders and assignments are not qualified in any way, but are all-inclusive and refer to those which are actual duty assignments, for which compensation is to be paid, and those which are emergency, for which no compensation is to be paid.

If a marshal, before he acted in an emergency, were first to get an actual duty assignment from the chief before he attempted to handle an emergency, his usefulness would not be very great. The admission of oral testimony by the chief here to establish custom and not only permission but direct orders from the chief to a marshal to accompany a regular policeman when both the chief and marshal were in the police station when a call came in, was correct, and *McAnney* v. *Galloway Township*, 120 *N. J. L.* 311; 199 *Atl. Rep.* 369, is dispositive of this point where the prescription of duties in a statute is plainly not designed to be exclusive.

Van Ness was engaged in an effort to do his duty as a police marshal, and we find that the injury or death sustained while so employed is classable as the emanation of an accident arising out of and in the course of his employment, within the intendment of the Workmen's Compensation Act, *N. J. S. A.* 34:15-7, *et seq.*, as supplemented by chapter 355 of the laws of 1931, *N. J. S. A.* 34:15-43. *McAnney* v. *Galloway Township, supra; Rightmyer* v. *Totowa Borough*, 17 *N. J. Mis. R.* 300; 8 *Atl. Rep.* (*2d*) 772; *Pierce* v. *Layton*, 22 *N. J. Mis. R.* 9; 34 *Atl. Rep.* (*2d*) 755, and *Aiello* v. *Borough of Verona*, 18 *N. J. Mis. R.* 176; 11 *Atl. Rep.* (*2d*) 835.

The respondent's other contention is that there is no proof of an injury by accident and no proof of causal relation. We cannot agree. The death certificate and three medical experts gave as the cause of death coronary occlusion. All the experts agreed that excitement, confusion, restlessness, anxiety, emotional strain, could produce coronary occlusion. The testimony clearly establishes the excited, confused, emotional state of Van Ness. There is no other medical conclusion offered as to the cause of death. The medical expert for

the respondent said that without an autopsy any cause of death was speculation. That may be true, but we have no autopsy here to aid us. We must deal with the facts as we have them. That the decedent was excited we know from witnesses who saw and heard him, and from the witnesses who saw the manner in which he drove his car. That coronary occlusion is a logical medical hypothesis is evident.

The judgment of the Workmen's Compensation Bureau is affirmed.