ROBERT J. CUNA, PETITIONER-RESPONDENT, v. BOARD
OF FIRE COMMISSIONERS, AVENEL, NEW JERSEY,
RESPONDENT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued February 25, 1963—Decided May 27, 1963.

Before Judges CONFORD, GAULKIN and KILKENNY.

*Mr. Alfred J. Hill* argued the cause for the petitioner (*Messrs. Wilentz, Goldman, Spitzer & Sills,* attorneys).

*Mr. Louis J. Douglass* argued the cause for the appellant (*Messrs. Mead, Gleeson, Hansen & Panlages,* attorneys).

The opinion of the court was delivered by

GAULKIN, J. A. D. Petitioner, a volunteer fireman, was awarded workmen's compensation by the Division for an injury sustained while playing softball as a member of a team representing his fire company, Avenel Fire Co. No. 1, in the league organized by the recreation commission of Woodbridge Township. The County Court affirmed, in an opinion reported in 75 *N. J. Super.* 152 (1962), and the Board of Fire Commissioners of Avenel (Avenel) appeals.

The facts are set forth in sufficient detail in the opinion of the County Court. The sole issue is whether an injury so sustained is covered by *N. J. S. A.* 34:15–43. Since the resolution of that question turns entirely upon the construction of certain critical words in that statute, it becomes necessary to trace the evolution of the language of the statute.

When the Workmen's Compensation Act was first adopted (*L.* 1911, *c.* 95) it did not cover government employees. *L.* 1913, *c.* 145, extended the act to such employees (with minor exceptions not material here) and provided that they "shall be compensated under and by virtue of section two * * *" of *L.* 1911, *c.* 95. Said section two of *L.* 1911, *c.* 95 provided then, as it does now, for the compensation of injuries caused "by accident arising out of and in the course of his employment." (*L.* 1911, *c.* 95, *p.* 136, ¶ 7)

The Workmen's Compensation Act was first extended to volunteer firemen by *L.* 1927, *c.* 127. This was done by amending *L.* 1913, *c.* 145 to read, in its pertinent parts, as follows:

"1. Every employee who shall be in the employ of the State, county, municipality * * * and also each and every active volunteer fireman doing public fire duty * * · * shall be compensated under and by virtue of section two [of the Workmen's Compensation Act] * * *."

However, no provision was made as to the source of the funds for the payment of such compensation until *L.* 1928, *c.* 163. That statute authorized municipalities to provide compensation insurance for volunteer firemen, and provided that "such insurance shall protect such volunteer firemen from loss for injury suffered while engaged in the performance of their duties." This act was supplanted by *L.* 1931, *c.* 172, which required every municipality to provide such insurance, and that "[a]ll payments hereunder shall be governed by and be subject to * * *" the Workmen's Compensation Act. But there was added this significant provision: "* * * such insurance shall protect such volunteer firemen from loss by reason of injury or death suffered while engaged in the performance of duty."

Said *chapter* 172 was approved April 21, 1931. On April 28, 1931 the Legislature adopted *L.* 1931, *c.* 355, which amended *L.* 1927, *c.* 127 (apparently with the intention of making it conform to said provisions of *L.* 1931, *c.* 172) by

inserting, in the clause dealing with volunteer firemen, the words "who may hereafter be injured in line of duty * * *." In *R. S.* 34:15-74, *N. J. S. A., L.* 1931, *c.* 172, was shortened to a single sentence, omitting the "in the line of duty" language, probably because it had been duplicated in *L.* 1931, *c.* 355, and carried into *R. S.* 34:15-43, *N. J. S. A.*

The effect of these amendments was to make injuries to volunteer firemen compensable only if sustained in line of duty.

▇ The insertion of the words "in the line of duty" was the first departure from the "arising out of and in the course of his employment" formula of *L.* 1911, *c.* 95. Injuries "in the line of duty" obviously arise out of and in the course of employment (*McAnney v. Galloway Township,* 120 *N. J. L.* 311, 313 (*Sup. Ct.* 1938)), but it is equally obvious that not all injuries "arising out of and in the course of employment," as those words have been interpreted in the workmen's compensation cases, are sustained in the line of duty. The ordinary employee (including the paid fireman) is frequently awarded compensation for injuries sustained while doing things plainly not in the line of his duty, but which are held to have arisen out of and in the course of his employment. Thus, "in the line of duty" is plainly a narrower classification than "arising out of and in the course of his employment." *Cf. Brower v. Township of Franklin,* 119 *N. J. L.* 417, 424 (*Sup. Ct.* 1938); *Frazer v. Martinsville Engine Co. No.* 1, 23 *N. J. Super.* 389 (*Cty. Ct.* 1952).

▇ We think it must therefore be accepted that the Legislature intended that eligibility of volunteer firemen for compensation under *N. J. S. A.* 34:15-43 be more narrowly confined than that of the ordinary employee. That intention becomes doubly clear when we see that "in line of duty" or similar language was used when *N. J. S. A.* 34:15-43 was extended to first aid and rescue squads (*L.* 1946, *c.* 300; *L.* 1948, *c.* 430; *L.* 1951, *c.* 211; *cf. L.* 1952, *c.* 317). The need for such a narrow construction is demonstrated by *L.* 1958, *c.* 149, *p.* 662, which provides workmen's compensation

to one who is not an "active volunteer fireman" or "active volunteer, first aid or rescue squad worker," but who, on even a single occasion, performs "any public fire duty or public first aid or rescue squad duty, as the same are defined in this section, at the request of the chief * * * or person in charge * * *." This provision is now part of *N. J. S. A.* 34:15–43.

With that background, we turn to the question whether a softball game is included in the following language of *N. J. S. A.* 34:15–43 :

"As used in this section, the terms 'doing public fire duty' and 'who may be injured in line of duty,' as applied to active volunteer firemen * * * shall be deemed to include participation in any authorized construction, installation, alteration, maintenance or repair work upon the premises, apparatus or other equipment owned or used by the fire company, participation in any authorized public drill, *showing, exhibition*, or parade of said volunteer firemen * * * either with or without their fire apparatus and to include also the rendering of assistance in case of fire * * * in * * * another State of the United States or on property ceded to the Federal Government while such assistance is being rendered and while going to and returning from the place in which it is rendered." (Emphasis ours)

 It is contended that a softball game is a showing or exhibition within the meaning of this quoted section of the act. We think it is not. We hold that the showings and exhibitions which the Legislature intended to cover are showings and exhibitions related to the *work* of volunteer fire companies, as distinguished from showings and exhibitions of volunteer firemen at *play*. The related words in *N. J. S. A.* 34:15–43 so indicate—"construction, installation, alteration, maintenance or repair work upon the premises, apparatus or other equipment * * * participation in any authorized public drill * * * parade * * * and * * * the rendering of assistance in case of fire and, when authorized, in connection with other events affecting the public health or safety, in * * * another State * * * while such assistance is being rendered and while going to and returning from the place in which it is rendered."

The volunteer fire companies are an ancient and honorable institution, dating from before the Revolution. As Herbert Asbury pointed out in his book, *Ye Olde Fire Laddies* (1930), they were social clubs, of varying degrees of exclusiveness and social standing, as well as fire fighting organizations; and many were as famous for their chowder parties, dances and street fights as for their prowess in fire fighting. The street fights are, happily, a thing of the past, but the social aspects of these organizations (and the chowder parties and their modern equivalents) persist. Certainly it was not the intention of the Legislature to compensate volunteer firemen injured at such things as picnics or parties, as industrial workers are. *Cf. Kelly v. Hackensack Water Co.,* 10 *N. J. Super.* 528 (*App. Div.* 1950) ; *DuCharme v. Columbia Engineering Co.,* 31 *N. J. Super.* 167 (*App. Div.* 1954).

Taken literally, the words "showing" and "exhibition" would cover such volunteer firemen's activities at a picnic or party as horseshoe pitching, tug of war, wrestling, sack races and square dancing. The words would cover pie-eating contests and the appearances of bowling teams and barber shop quartets. Volunteer firemen run bingo games, carnivals, circuses, and other fund-raising affairs. Obviously, therefore, the words may not be read literally; the principle of *ejusdem generis* applies. We hold the words do not include softball.

Petitioner, of course, relies on the dissenting opinion in *Complitano v. Steel & Alloy Tank Co.,* 63 *N. J. Super.* 444 (*App. Div.* 1960), adopted by the Supreme Court in 34 *N. J.* 300 (1961). However, as Judge Conford said in that opinion, 63 *N. J. Super.,* at *p.* 456, "Cases in this area depend upon their precise factual coloration." The *Complitano* case did not involve the question of whether what Complitano was doing was in the line of his duty.

For the foregoing reasons, the judgment of the County Court is reversed, and judgment is entered in favor of Avenel. No costs.