ROBERT J. CUNA, PETITIONER-APPELLANT, v. BOARD OF FIRE COMMISSIONERS, AVENEL, NEW JERSEY, RESPONDENT-RESPONDENT.

Argued February 4, 1964—Decided May 4, 1964.

*Mr. Alfred J. Hill* argued the cause for petitioner-appellant (*Messrs. Wilentz, Goldman & Spitzer,* attorneys).

*Mr. Louis J. Douglass* argued the cause for respondent-respondent (*Messrs. Mead, Gleeson, Hansen & Pantages,* attorneys).

The opinion of the court was delivered by

SCHETTINO, J. This is a workmen's compensation case in which a volunteer fireman seeks compensation.

The facts are not in dispute. In early 1959, Robert J. Cuna, the petitioner-appellant, joined the Avenel Fire Company No. 1, a volunteer fire company. Shortly after joining, Cuna was asked by the company's athletic chairman to play on the company's softball team. Cuna stated that although he was not compelled to play on the team, he accepted the offer as "one of [his] duties." The Avenel team participated with six other volunteer fire company teams and one police team in a softball league organized by the Woodbridge Township Recreation Department. League games were open to the public at no charge, and the schedule and results of the games were published in the local and county newspapers. At all games the Avenel players wore softball uniforms with the fire company's legend printed across the front of the shirts. The uniforms, bats, balls, and other equipment used in the games were supplied by the fire company out of its own funds.

On June 10, 1960 in a game between Avenel and Iselin fire companies, Cuna injured his leg while sliding into home plate. For these alleged injuries, he sought compensation under *N. J. S. A.* 34:15-43.

The Division of Workmen's Compensation rendered a judgment in favor of Cuna both for temporary and permanent disability and for various medical bills. On appeal the Middlesex County Court affirmed, 75 *N. J. Super.* 152 (1962). It held that *N. J. S. A.* 34:15-43 encompassed the injury sustained as the result of a "showing" or "exhibition," that it was the Legislature's intent to embrace the activity in which Cuna was engaged, and that recovery could be granted upon the rationale of *Complitano v. Steel & Alloy Tank Co.*, 34 *N. J.* 300 (1961), *i. e.*, the mutual benefit doctrine. Thereupon, respondent appealed to the Appellate Division which reversed, holding that *Complitano* did not control because the Legislature intended that "eligibility of volunteer firemen for compensation under *N. J. S. A.* 34:15-43 be more narrowly confined than that of the ordinary employee." 79 *N. J. Super.* 264, 267 (1963).

Appellant petitioned for and was granted certification. 41 *N. J.* 118 (1963).

## I.

In holding that the petitioner's injury was not within the coverage intended by the Legislature, the Appellate Division placed some emphasis on the view that today (as well as in the past) volunteer fire companies are primarily social organizations. Whatever may be the actual extent of these social activities is immaterial, for we view that aspect of the volunteer fire company's activities as subordinate to the invaluable public service the volunteer firemen have performed throughout our nation's history.

In early America, there were no paid firemen and the community depended solely on the volunteer to protect it from fire. In New Jersey, for example, a fire company was established in Princeton on February 11, 1788. Prior thereto, there had been in the college among the students an engine and apparatus and an organization to help put out fires. The new organization consisted of "The best men in town." *Hageman, History of Princeton* (1879), *p.* 11. The author points out the membership of the company consisted of substantial citizens and that these prominent men—professors and other professional men—were not merely honorary but attending members who shared in the duties and offices. (at *p.* 20) A rule required members—on pain of being fined— "to repair to the building on fire when the alarm was given."

References to the activities of other New Jersey volunteer companies are found in *Cushing and Sheppard, History of the Counties of Gloucester, Salem and Cumberland* (1883), *pp.* 388–90. And Hageman, in *History of Burlington and Mercer Counties* (1883), *p.* 135, refers to the function of "primitive bucket companies" early in the history of the City of Burlington.

George Washington was an enthusiastic and active volunteer fireman during most of his life, *Asbury, Ye Olde Fire Laddies* (*Knopf* 1930), *pp.* 64–82, and Benjamin Franklin was the

cofounder of Philadelphia's first volunteer fire company. *Morris, Fires and Firefighters* (*Little, Brown* 1953), *pp.* 28–30. John Jay, Alexander Hamilton and Aaron Burr were also volunteer firefighters. *Ye Olde Fire Laddies, p.* 64. See also *Dougherty, Fire* (*G. P. Putnam's Sons* 1931) and *Holzman, The Romance of Firefighting* (*Harper* 1956), on the history of fire fighting.

Though most big cities now have paid fire departments, the small communities still depend on the volunteer firemen. Although no definitive record exists, the office of the New Jersey League of Municipalities estimates that about 50 municipalities have paid, full-time firemen. We have learned informally from the Secretary of the New Jersey Firemen's Mutual Benefit Association that 65 municipalities have fully or partly paid fire departments. The salary ranges for full-time firemen (exclusive of some fringe benefits) are from $4,000 to $6,905 for a 48-hour work week.

The office of the New Jersey Volunteer Firemen's Association has a record of 1200 volunteer fire companies, with a membership in each of 25 to 60, thus totaling at least 30,000. The membership includes doctors, lawyers, clergymen, skilled and unskilled workers. These companies protect at least 449 municipalities. An insurance company estimated that in 1956 there were more than 250,000 volunteer firemen in the United States. *The Romance of Firefighting, supra,* at *p.* 119.

In order to encourage the formation and maintenance of such companies, certain exemptions were granted by the Legislature. In 1826 "An act for the encouragement of Fire Companies" was passed providing "That all persons who now are, or hereafter shall become and continue, actual members of any regular fire company or association, who now are, or hereafter shall be possessed of a fire engine, and which said fire company or association, shall consist of not less than sixteen men, and not more than thirty men, be, and they are hereby exempted from militia duty in time of peace." Acts of the Fifty-First General Assembly of the State of New Jersey, 1826, *p.* 36.

*Chapter* 176 of the *Laws of* 1876 providing for the incorporation of fire companies was supplemented by *Chapter* 139 of the *Laws of* 1877, which provided as follows:

"* * * That any person who shall have served seven years as a member of any fire company organized under the act to which this is a supplement, shall be thereafter exempt from serving in the militia in the time of peace or as a juror, in which latter case he shall not be entitled to such exemption, unless he shall have filed in the office of the clerk of the county in which he shall reside, a certificate of such service made by the presiding officer of such company."

*Chapter* 128 of the *Laws of* 1880 exempted firemen with seven consecutive years' service from jury duty. *Chapter* 77 of the *Laws of* 1903 made consecutive service unnecessary. In 1881 the Legislature passed *Chapter* 174 of the *Laws of* 1881 exempting certain firemen from taxation. Present-day statutory benefits provide special licenses for peddling and hawking (*N. J. S. A.* 45:24–9), tenure benefits (*R. S.* 40:47–60 *et seq.*), and exemption from jury duty (*N. J. S.* 2A:69–2).

These provisions indicate a deliberate recognition by the Legislature of the great benefits conferred upon municipalities by the volunteer fire companies.

## II.

We now turn to the relevant portions of *N. J. S. A.* 34–15–43 which provide:

"Every officer, appointed or elected, and every employee of the State, county, municipality or any board or commission, or any other governing body, including * * * each and every active volunteer fireman doing public fire duty and also each and every active volunteer, first aid or rescue squad worker, including each and every authorized worker who is not a member of the volunteer fire company within which the first aid or rescue squad may have been created, doing public first aid or rescue duty under the control or supervision of any commission, council or any other governing body of any municipality, any board of fire commissioners of such municipality or of any fire district within the State, or of the board of managers of any State institution, and every county fire marshal and assistant county fire marshal, who may be injured in line of duty shall be compensated under and by virtue

of the provisions of this article and article 2 of this chapter (sections 34:15-7 et seq.). * * *

As used in this section, the terms 'doing public fire duty' and 'who may be injured in line of duty,' as applied to active volunteer firemen, county fire marshals or assistant county fire marshals, shall be deemed to include participation in any authorized construction, installation, alteration, maintenance or repair work upon the premises, apparatus or other equipment owned or used by the fire company, participation in any authorized public drill, showing, exhibition, or parade of said volunteer firemen or marshals either with or without their fire apparatus and to include also the rendering of assistance in case of fire and, when authorized, in connection with other events affecting the public health or safety, in any political subdivision or territory of another State of the United States or on property ceded to the Federal Government while such assistance is being rendered and while going to and returning from the place in which it is rendered."

The Appellate Division apparently conceded that were petitioner a paid fireman or other "ordinary employee," he would be entitled to workmen's compensation by virtue of *Complitano, supra.* But in denying relief, it held that the critical words of this provision are "in line of duty," and that these words required a different and a more narrow classification than the traditional one, "out of and in the course of his employment." 79 *N. J. Super.,* at *p.* 267.

We cannot agree with this approach or conclusion. Liberality of construction of the Workmen's Compensation Act has been firmly established. *Diaz v. Newark Industrial Spraying, Inc.,* 35 *N. J.* 588, 590 (1961); *Granahan v. Celanese Corp. of America, Plastics Div.,* 3 *N. J.* 187, 193 (1949). Recently, in *Volek v. Borough of Deal,* 83 *N. J. Super.* 58, 63 (1964), the Appellate Division stated:

"* * * We [are] mindful of the legal philosophy of giving a broad, liberal interpretation to coverage under our Workmen's Compensation Act. We also feel that the volunteer fireman and rescue worker, who risk life and limb to save others and their property, without any monetary reward, are entitled to an indulgent application of the law."

In *McAnney v. Galloway Township,* 120 *N. J. L.* 311 (*Sup. Ct.* 1938), the chief of a volunteer fire company was killed in an automobile accident while returning home after pumping out the cellar of a local residence. The question was whether

this act of pumping was "within his 'line of duty,' so that injury or death sustained while so employed is classable as the emanation of an accident arising out of and in the course of his employment, within the intendment of the Workmen's Compensation Act * * *." The court held that the injury was within the statutory classification, stating (at *p.* 313) :

"* * * We do not apprehend that the legislature, by the phrase 'in the line of duty' contained in this supplement to the Compensation Act, intended to qualify the basic provision of the statute touching the relationship of the injury to the employment. Such a purpose is not to be presumed from the mere use of different language, especially when the phraseology has long been associated with this particular branch of the public service; it must be expressed in clear and definite terms admitting of no doubt of the intention. A fireman injured 'in the line of duty' expressly assigned, or reasonably to be implied, suffers injury by accident arising out of and in the course of his employment."

In *Vogt v. Borough of Belmar,* 14 *N. J.* 195, 206 (1954) we pointed out that the relationship between a municipality and a volunteer fireman is not that of master and servant, and that the volunteer fireman cannot be viewed as an employee in the true sense.

Thus, the term "out of and in the course of his employment" could not accurately be applied to volunteer firemen in the workmen's compensation area and another term, "in the line of duty," was substituted. There is no suggestion that the Legislature ever intended to give it a meaning different from the traditional "out of and in the course of his employment" classification.

Moreover, the legislative history of the compensation act, as applied to volunteer firemen, indicates, by the continuing expansion of the activities for which coverage has been afforded, that a liberal rather than a restrictive reading of the statute should be made. The Legislature has always reacted to a narrow judicial construction by modifying the statute to spell out the more liberal interpretation. For examples, *Brower v. Township of Franklin,* 119 *N. J. L.* 417 (*Sup. Ct.* 1938), held that volunteer firemen came under the

protection of the workmen's compensation statute only when they belonged to a company under municipal control and supervision. This holding was overruled by the Legislature when it amended *N. J. S. A.* 34:15–43 as follows:

"Every active volunteer fireman shall be deemed to be doing public fire duty under the control or supervision of any such commission, council, governing body, board of fire commissioners or fire district or board of managers of any State institution within the meaning of this section, if such control or supervision is provided for by statute or by rule or regulation of the board of managers or the superintendent of such State institution, *or if the fire company of which he is a member receives contributions from, or a substantial part of its expenses or equipment are paid for by, the municipality, or board of fire commissioners of the fire district* or if such fire company has been or hereafter shall be designated by ordinance as the fire department of the municipality." (Emphasis supplied) *L.* 1946, *c.* 300, § 1, *p.* 1000.

In *Frazer v. Martinsville Engine Co. No. 1,* 23 *N. J. Super.* 389 (*Cty. Ct.* 1952), the trial court gave a narrow reading to the language "in line of duty" holding that a volunteer fireman working on the erection of a firehouse was not engaging in an act contemplated by these statutory words. Subsequently, the Legislature amended the statute to provide that the terms "doing public fire duty" and "in line of duty" included "participation in any authorized construction, installation, alteration, maintenance or repair work upon the premises, apparatus or other equipment owned or used by the fire company." *L.* 1958, *c.* 149, § 1, *p.* 660.

Other amendments to the act, plus the statements attached to the respective bills, evidence the legislative policy in favor of extending a broad coverage to volunteer firemen. By a 1951 amendment to *N. J. S. A.* 34:15–43, the Legislature provided that the terms "doing public fire duty" and "in line of duty" should include "participation in any authorized public showing, exhibition, or parade * * * either with or without their fire apparatus." *L.* 1951, *c.* 211, *p.* 757, § 1. The following "Statement" was annexed to the bill (*Senate No. 70*):

"The purpose of this bill is to clarify the language in section 34:15–43 of the Revised Statutes as it appertains to active volunteer firemen. This section was amended by P. L. 1948, chapter 430, effective July first, 1948. In view of a construction placed upon the language of this section in connection with the application of a volunteer fireman for workmen's compensation, arising out of an accident which occurred July 4, 1948, *this bill is required to widen the construction therein given and to bring it in harmony with the original intent of the 1948 amendment.*" (Emphasis added)

A 1952 amendment to the act enlarged the classification of volunteer firemen to those "under the control or supervision of * * * the board of managers of any State institution." *L.* 1952, *c.* 317, *p.* 1038, § 1. The "Statement" attached to the bill (*Senate No.* 315) noted:

"It has been the general practice in State institutions to recruit volunteer companies from among the employees for the purpose of fire fighting duty. Some of the institutions have reciprocal agreements with neighboring communities under the terms of which the volunteer companies provide mutual assistance where the conditions arise.

In a recent case, employees of one of the State institutions, who were members of its volunteer fire company, were injured while responding to a call for help in fighting a fire in a neighboring municipality which had a mutual assistance arrangement with that institution. A question has arisen as to workmen's compensation coverage for these State employees under the circumstances.

The purpose of this amendment is to remove any doubt regarding the obligation of a State institution to provide compensation for any of its employees who may be injured in the actual performance of fire fighting duty in accordance with rules and regulations promulgated by the institution authorities."

The terms "doing public fire duty" and "in line of duty" were subsequently enlarged to include "the rendering of assistance in case of fire in any political subdivision or territory of another State of the United States or on property ceded to the Federal Government while such assistance is being rendered and while going to and returning from the place in which it was rendered." (*L.* 1953, *c.* 414, *p.* 2077, § 1) ; and "public drill" (*L.* 1955, *c.* 102, *p.* 561, § 1).

Further evidence of the Legislature's beneficial concern for the volunteer firemen is seen in the 1952 amendment to *N. J.*

*S. A.* 34:15–75 regarding the basis of the rate of compensation to volunteer firemen. Prior to 1952 the rate of compensation was based upon the weekly salary of the fireman in his private employment, *L.* 1931, *c.* 172, *p.* 382, § 2. In 1952 the Legislature provided that compensation was to be based upon a weekly salary or compensation *"conclusively* presumed to be received by such [volunteer fireman] in an amount sufficient to entitle him   \*   \*   \*   to receive the *maximum* compensation   \*   \*   \*." *L.* 1952, *c.* 316, *p.* 1037, § 2. (Emphasis supplied)

In other jurisdictions the courts have not taken the restrictive view. Although involving a paid fireman, in *Elliott v. City of Omaha,* 109 *Neb.* 478, 191 *N. W.* 653 (*Sup. Ct.* 1922), the court had before it a statutory provision allowing recovery when "death is caused by or is the result of injuries received while in the line of duty." It stated that "It will be readily conceded that the phrase, 'injuries received while in the line of duty,' has a much broader meaning than the language [arising out of and in the course of employment] generally used in compensation acts." In *Koktavy v. City of New Prague,* 246 *Minn.* 550, 75 *N. W. 2d* 774 (*Sup. Ct.* 1956), the court allowed a volunteer fireman to recover for injuries sustained while setting off aerial bombs during a bond rally. The fireman had done this at numerous public functions and had the permission of the fire chief. The court stated (75 *N. W. 2d,* at *p.* 777) : "It should not be overlooked, however, that we are dealing with an act which is highly remedial and humanitarian in purpose and which accordingly must be given a broad, liberal construction in the interests of the workman."

In *May v. City of Mount Vernon,* 182 *Misc.* 248, 50 *N. Y. S. 2d* 441 (*Cty. Ct.* 1944), a volunteer fireman recovered for an eye injury which occurred when he was struck by a ping pong ball. Petitioner went to his firehouse to fill out application blanks so he could obtain gasoline necessary for his use in performing his fireman's duties. After filling out the application, he stayed on, watched a card game, played a game of ping pong, and then sat down to watch others play ping pong

during which time he was injured. His injury was held compensable as within the performance of his duty as a volunteer fireman.

In *Stevens v. Village of Smyrna*, 281 *App. Div.* 918, 119 *N. Y. S. 2d* 807 *(App. Div.* 1953), the petitioner volunteer fireman attended a firemen's convention in a neighboring town and participated in various exercises and contests including a parade. After the parade, and during a baseball game, that town's alarm was sounded. Petitioner was injured while riding on the fender of the car of his assistant chief who was on the way to offer services or to see the fire. The court held that the nature of events at the convention came within the statutory language "drill and inspection" so as to allow relief.

We conclude that the expression "in line of duty" is no less comprehensive than "out of and in the course of his employment."

### III.

We next consider whether playing in an authorized softball game comes within that part of *N. J. S. A.* 34:15–43 which defines "public fire duty" as "participation in any authorized public drill, showing, exhibition, or parade of said volunteer firemen * * * with or without their fire apparatus." The Appellate Division again used the restrictive approach in finding that "the showings and exhibitions which the Legislature intended to cover are showings and exhibitions related to the *work* of volunteer fire companies, as distinguished from showings and exhibitions of volunteer firemen at *play*." 79 *N. J. Super.*, at *p.* 268.

We agree with the County Court that by the use of the modifying words "with or without their fire apparatus" the Legislature intended that more than "work" activities of volunteer firemen were to be covered. The court stated (75 *N. J. Super.*, at *pp.* 155–156) :

"The words 'showing,' 'exhibition,' or 'parade' make it clear that direct relationship to the ordinary duties of a fireman is not a *sine qua non*. In addition, if further support were needed for this view

it is found in the statute where it provides that the public drill, showing, exhibition or parade may be 'with or without fire apparatus.'
\* \* \*

A 'public drill' or a 'parade' would present no difficulty of recognition; the additional words 'showing' and 'exhibition' are not so easily defined. The history of the legislation indicates that the legislative intent was to widen the construction placed upon *L*. 1948, *c*. 430. While parades and public drills were unquestionably covered by the amendment and present little problem, the lawmaking body evidently sought to cover additional activities as well, without specifically enumerating them and thereby restricting future interpretation.

If the showing or exhibition is 'authorized,' an injury arising therefrom would appear to be compensable whether the fire apparatus is being used or not. Authorization was sufficiently established *prima facie*, and nothing was presented to raise a factual question in that regard.

'Exhibition' has been defined to mean, among other things, 'the act or fact of showing publicly'; 'a public show or display, as of athletic feats.' *Webster's New World Dictionary (College ed.)*. 'Showing' has been defined as 'an act of presenting or bringing to view or notice.' *Ibid*."

## IV.

■ Moreover, we feel that the Legislature did not intend to limit the activities from which compensation might arise to those expressly stated in *N. J. S. A.* 34:15–43. When the Legislature stated "As used in this section, the terms 'doing public fire duty' and 'who may be injured in line of duty,' as applied to active volunteer firemen, \* \* \* *shall be deemed to include* participation \* \* \*," (emphasis added) it did not intend to limit the activities to those thereafter enumerated but intended, as the words plainly indicate, to make sure that they would be held to include what was there expressed. It was not intended that "shall \* \* \* include" should exclude other activities. "Include" is susceptible to two shades of meaning: (1) that the thing which is stated is the only thing intended; or (2) that the thing which is stated constitutes only one of the things intended. *Schluckebier v. Arlington Mutual Fire Ins. Co.*, 8 *Wis*. 2d 480, 99 *N. W*. 2d 705, 707 (*Sup. Ct.* 1959). Ordinarily the term "include" is a word of enlargement and not of limitation. *Gray· v. Powell,* 314 *U. S.* 402, 62 *S. Ct.* 326, 86 *L. Ed.* 301 (1941) ; ·*People*

*v. Western Air Lines, Inc.,* 42 *Cal.* 2d 621, 268 *P.* 2d 723, 733 (*Sup. Ct.* 1954). For example, referring to a statute allowing a city to answer calls for assistance from nearby towns, a New York court stated that "a call for assistance" includes any call for aid resulting from the operation of a recognized plan for furnishing of mutual aid in cases of fire or other public emergency and that the word "include" was used as "a word of enlargement or as indicating the reverse of a restrictive intention, *specifying a particular case inserted out of abundant caution." City of Watertown v. Town of Watertown,* 207 *Misc.* 433, 139 *N. Y. S.* 2d 198, 206 (*Sup. Ct.* 1952). (Emphasis added)

The Legislature enumerated certain activities in order to make crystal clear to any court that, as to such enumerated activities, there should be no doubt that injuries incurred in performing any such activity would be compensable. But the Legislature did not thereby preclude recovery as to other activities which have been held within the ambit of compensability with respect to injuries sustained by paid employees.

## V.

In *Complitano, supra,* we affirmed on the basis of Judge Conford's dissenting opinion (63 *N. J. Super.* 444, 456) an award to an employee who was injured while playing softball in an industrial league after working hours. The rationale behind the allowance of recovery in *Complitano* was the "mutual benefit doctrine." That rule allows compensation where the employer as well as the employee receives benefits from the recreational activity. The factual complex of *Complitano* led to the conclusion that the employer as well as the employee was receiving a "clear and substantial benefit." 63 *N. J. Super.,* at *p.* 469.

Significantly, a substantial number of those factors which were found to confer a benefit to the employer in *Complitano* are present in the instant appeal. The legend of the company

on the baseball uniforms, the free admission to the games which were open to the public and the posting of the scores and schedules in the local newspapers, are factors present in this case which were deemed in *Complitano* to evidence a benefit to the employer. 63 *N. J. Super.*, at *p.* 465.

Certainly, substantial benefits inured to respondent Board of Fire Commissioners as a result of the softball team. As pointed out in *Brown v. Town of Gates, et al.*, 266 *App. Div.* 640, 44 *N. Y. S.* 2d 703, 705 (*App. Div.* 1943) : "Of course, a volunteer company has to provide something entertaining as an incentive for its members to remain in it and to attract new members." Participation on the softball team would build the *esprit de corps* of the members (*Complitano, supra*) and would foster teamwork, elements which are as integral to firefighting as they are to softball. The game is useful as a public relations device to gain community support for the company, not the least of which may be financial aid in the case of a volunteer company. *Moore's Case*, 330 *Mass.* 1, 110 *N. E.* 2d 764, 766–767 (*Sup. Jud. Ct.* 1953). We feel that this doctrine applies in this case.

In passing, we note the application of the "mutual benefit doctrine" in *Harrison v. Stanton*, 26 *N. J. Super.* 194, 199 (*App. Div.* 1953), affirmed 14 *N. J.* 172 (1954) (director's employee injured while driving a baby sitter home after he and his wife had returned from a social function deemed to have been a promotional incident of his employer's business), and *Kelly v. Hackensack Water Co.*, 10 *N. J. Super.* 528 (*App. Div.* 1950), opinion after remand, 23 *N. J. Super.* 88 (*App. Div.* 1952) (employee killed during a company outing when he fell into a ravine on a return walk from the picnic park to the excursion boat).

The judgment of the Appellate Division is reversed and the judgment of the County Court is reinstated.

HALL, J. (dissenting). I would affirm the judgment of the Appellate Division substantially for the reasons expressed in its opinion. It is inconceivable that the Legislature intended

by *N. J. S. A.* 34:15–43 to require the use of municipal funds to provide workmen's compensation for injuries sustained in the course of essentially social enterprises of volunteer firemen, if, indeed, it has the power to do so. While those acquainted with the functions and activities of volunteer fire companies recognize the inestimable value of the public service they render and the necessity of public provision for compensation for injuries sustained in the course of that duty and functions reasonably related thereto (as this statutory section clearly intends), they also fully realize that many of their activities, though completely proper, are social in nature, for purely personal enjoyment and financed by funds privately obtained. Such activities are quite distinct from the fire-fighting function and beyond the effective control of the municipality. As one weekly newspaper recently put it in the course of a series of articles on fire protection in rural and suburban areas: "* * * the firehouse is regarded as the workingman's most exclusive and demanding social club." *Somerset Messenger Gazette*, Somerville, N. J., February 20, 1964, *p.* 17. A volunteer fireman hurt while playing softball on the company team should be no more entitled to compensation at public expense than the off-duty policeman similarly injured at the annual clambake of his Patrolmen's Benevolent Association or the factory worker (at the cost of his employer) who breaks his leg in a three-legged race at his union's picnic. I feel confident the Legislature could not possibly have intended otherwise.

Justice HANEMAN joins in this opinion.

*For reversal* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR and SCHETTINO—5.

*For affirmance*—Justices HALL and HANEMAN.