84 N.J. Super. 324 (1964)
202 A.2d 182
MARGARETHE FOERSTER, PETITIONER-RESPONDENT,
v.
KEANSBURG FIRE DEPARTMENT, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 15, 1964.
Decided June 26, 1964.
*326 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Louis J. Douglass argued the cause for appellant (Messrs. Mead, Gleeson, Hansen & Pantages, attorneys).
Mr. Edmund J. Canzona argued the cause for respondent (Messrs. Parsons, Canzona, Blair & Warren, attorneys).
The opinion of the court was delivered by COLLESTER, J.A.D.
Respondent Keansburg Fire Department appeals from a judgment of the County Court affirming an award by the Division of Workmen's Compensation in favor of petitioner Margarethe Foerster, the widow of Fred W. Foerster, a volunteer fireman, who died of a heart attack during Memorial Day services for deceased members of the fire department. The issues involved are, (1) whether decedent was covered by workmen's compensation under the provisions of N.J.S.A. 34:15-43, and (2) whether decedent's death was the result of an accident which arose out of and in the course of his employment within the intendment of the Workmen's Compensation Act.

*327 I.
On the date of his death, decedent had been a member for 31 years of the Keansburg Fire Department, comprised of volunteer firemen. He was 59 years of age and suffered from a heart condition, having had several heart attacks over a period of some years. He had attained the status of an exempt fireman, having complied with the requirements of N.J.S.A. 40:47-53 for the statutory seven-year period. After having attained such status he continued as an active member of the fire department.
Prior to his death his assignment at a fire was to serve as a member of the fire police, directing traffic, keeping people away from the scene of a fire, setting up fire lines and maintaining a watch over a burned building after the fire was secured. During a fire he was subject to the orders of the chief and required to perform such duties as directed. In addition to his firefighting duties he also held the post of lay chaplain of the fire department. During the year 1959 and up to the date of his death on May 30, he had attended 30 out of 67 fires.
On May 30, 1959 the Fire Department of Keansburg held a Memorial Day parade which terminated with a memorial service for deceased members of the fire department at Firemen's Memorial Park, at a monument erected there in honor of deceased firemen. It was decedent's duty as chaplain to recite a prayer at the services after wreaths had been presented and placed at the monument.
Prior to the parade decedent had gone to the firehouse to assist in the preparations for the Memorial Day celebration. While there he assisted another fireman in lifting a couple of half-barrels of beer, each weighing about 250 pounds. He also carried cases of soda, each weighing 60 to 70 pounds, for a distance of 35 to 40 feet. He assisted placing wreaths, weighing 25 to 30 pounds, upon the fire truck. The day was hot and humid, and decedent removed his uniform coat while doing this heavy work. This physical exertion took place during *328 a one-hour period prior to decedent's departing to participate in the memorial services.
Decedent was driven from the firehouse to the park in an open fire truck. He wore his full fireman's uniform, consisting of a blue serge suit and fireman's hat. At the park decedent carried a wreath from the truck, 20 to 35 feet to the monument, and then took his place behind the monument until it was time for him to say the prayer. The memorial services lasted about 20 minutes or a half hour. After the wreaths had been presented and placed at the monument decedent gave his prayer, which was of two or three minutes duration. During his recitation his face became very red. His wife, who was standing nearby, asked him if he wanted a nitroglycerin pill, which he had in his pocket and was accustomed to taking when he had such attacks. Decedent did not answer, but completed the prayer in a faltering voice. He then collapsed to the ground and died.

II.
Respondent contends that decedent was an "exempt" fireman and as such could not be considered as an "active volunteer fireman" under the provisions of N.J.S.A. 34:15-43. This statute provides, inter alia:
"[E]very active volunteer fireman doing public fire duty * * * under the control or supervision of any commission, council or any other governing body of any municipality, any board of fire commissioners of such municipality * * * who may be injured in line of duty shall be compensated under and by virtue of the provisions of this article and article 2 of this chapter (sections 34:15-7 et seq.)

* * * * * * * *
As used in this section, the terms `doing public fire duty' and `who may be injured in line of duty' as applied to active volunteer firemen * * * shall be deemed to include * * * participation in any authorized public drill, showing, exhibition, or parade of said volunteer firemen * * * either with or without their fire apparatus * * *."
Respondent alleges that decedent was listed on the rolls of the fire department as an exempt volunteer fireman; that an *329 exempt fireman participates on a voluntary basis when he fights a fire and is not obligated and cannot be compelled to serve as a fireman; and that an "active volunteer fireman" must be between 21 and 35 years of age. It is contended that workmen's compensation benefits are granted under N.J.S.A. 34:15-43 only to "active volunteer firemen" and therefore decedent was not entitled to compensation under the statute.
N.J.S.A. 40:47-53 provides that a volunteer fireman shall be entitled to receive an exempt fireman's certificate when he has performed 60% of fire duty in a department during each of seven years. It is undisputed that decedent was an exempt fireman at the time of his death and had enjoyed that status since 1938.
A review of the statutory provisions concerning exempt firemen indicates it was the Legislature's intention to confer certain benefits upon persons who undertake to perform the necessary and hazardous duty of fighting fires. See R.S. 40:47-52 et seq. However, nothing contained therein purports to affect the active or inactive status of a volunteer fireman. Certainly such statutes do not equate an exempt status with an inactive status.
Furthermore, the fact that decedent was listed on the department rolls as an exempt fireman and not as an active fireman is not determinative of decedent's rights to be protected under N.J.S.A. 34:15-43. See Vogt v. Borough of Belmar, 14 N.J. 195 (1954), in which the meaning of the words "active volunteer fireman" in the statute were construed by the court to include anyone who serves as an active volunteer fireman "however he may have been classified on the membership rolls."
It is also clear from the evidence that an "active member" of the Keansburg Fire Department is not restricted to members between the ages of 21 and 35. Such limitation of years applies only to those who join the fire department. When a member attains the age of 36 years he must maintain the required standard of performance of 60% of fire duty during *330 each year in order to remain a member unless he has acquired the status of an exempt fireman. When he completes seven years of such performance he is entitled to exempt fireman status. Thereafter he can continue as an active volunteer fireman, without the necessity of maintaining the 60% performance standard.
The evidence shows that the Keansburg Fire Department is comprised of 25 "active" men and 27 exempt firemen. Compensation of $50 per year is paid by the borough to 40 men. Exempt firemen with the highest percentage of performance receive payment before active members (who are not exempt firemen) become entitled to receive such payments.
It is undisputed that decedent continued to be active in his service to the department until the date of his death.
We are satisfied that decedent was an "active volunteer fireman" within the intendment of N.J.S.A. 34:15-43; that such statute extends the benefits of the Workmen's Compensation Act not only to firemen listed on the department rolls as "active" members but to exempt firemen, like decedent, who actively participate in doing public fire duty.

III.
Petitioner's contention at the hearings below was that the physical exertion undertaken by decedent at the firehouse immediately preceding the memorial service, and the subsequent exposure to heat and humidity at the park, combined to be the competent producing cause of decedent's fatal coronary attack. Respondent argues that such physical exertion by decedent and his rendition of the prayer during the memorial service were not in his line of duty as a volunteer fireman, as contemplated by N.J.S.A. 34:15-43, and therefore petitioner is not entitled to compensation benefits.
The broad, liberal interpretation recently expressed in Cuna v. Bd. of Fire Com'rs, Avenel, 42 N.J. 292 (1964), to the meaning of N.J.S.A. 34:15-43, compels the conclusion that decedent came within the provisions of that section of the *331 Workmen's Compensation Act. In Cuna, a volunteer fireman was awarded compensation for a leg injury sustained while participating as a member of the fire company's soft-ball team. Certainly, if a volunteer fireman participating in a soft-ball game is entitled to the benefits of the Workmen's Compensation Act for injuries sustained while engaged in that recreational activity, a fortiori, a volunteer fireman, participating in preparations for a Memorial Day celebration by the fire department, and thereafter, in full dress uniform, acting as lay chaplain of that volunteer fire department by reciting a prayer at the memorial monument erected for departed firemen, should also be within the coverage of N.J.S.A. 34:15-43.
The Cuna case interpreted the statutory language relating to accidents by volunteer firemen "in line of duty" to be synonymous with "arising out of and in the course of his employment." The Supreme Court therein also indulged a most liberal interpretation as to the meaning of "public fire duty" to include not only those subjects expressly listed in the statute, such as "any authorized public drill, showing, exhibition or parade," but also other activities conducive to the creation of an esprit de corps and to maintain public relations in order to gain community support. In brief, the mutual benefit doctrine laid down in the case of ordinary employees in Complitano v. Steel & Alloy Tank Co., 34 N.J. 300 (1961), has been extended to the volunteer firemen.

IV.
Respondent further contends that decedent's death was not causally related to his work-connected activities on Memorial Day. We have the usual conflict in medical opinion between medical experts. We do not agree with respondent's expert that the physical effort of helping to lift barrels of beer and carrying cases of soda was causally unrelated to the fatal attack, because of the absence of immediacy of the onset. This fatal attack occurred within a period of less than an *332 hour from the time of that relatively heavy lifting for a man of decedent's years and physical condition. In Hewett v. Standard Concrete Block & Supply Co., 38 N.J. 531 (1962), recovery was permitted where symptoms of a heart attack did not appear for 25 or 30 minutes after the physical effort and the collapse, a period of time not substantially different from that present here.
The totality of the evidence herein results in our conclusion that there was a probable causal relationship between the activities of the decedent on that Memorial Day morning and the fatal heart attack. The work effort at the firehouse, the wearing of heavy fireman's clothing on a hot and humid day, the emotional stress which many people suffer when called upon to say only a few words or a short prayer at a public occasion, and decedent's preexisting bad heart condition, all combined to produce the end result.
We are aware that decedent's activities as a fireman on that day may have been only one of the contributing causes. However, it was settled in Dwyer v. Ford Motor Co., 36 N.J. 487 (1962), that where ordinary work effort in reasonable probability contributed in some material degree to the precipitation, aggravation or acceleration of the existing heart disease and death therefrom, the resulting death was compensable.
Having reviewed the evidence in the manner required by Russo v. United States Trucking Corp., 26 N.J. 430 (1958), we find that petitioner has sustained the burden of proving that her husband's death was causally related to his duties as a volunteer fireman.
The judgment of the County Court is affirmed.